"(3) The failure of the defendant to testify in his own defense; . . ."

· The argument complained of was not an indirect reference to the failure of the defendant to testify. See State v. Shilow, 252 La. 1105, 215 So.2d 828. It was legitimate argument on the lack of any evidence. C.Cr.P. art. 774 provides:

"The argument shall be confined to evidence admitted, *to the lack of evidence,* to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." (Emphasis added).

There is no merit to Bill of Exceptions No. 26.

The remaining Bills of Exceptions (Nos. 4 and 20) were neither briefed nor argued and are therefore deemed abandoned.

For these reasons, the conviction and sentence are affirmed.

BARHAM, J., concurs.

258 So.2d 857

**Barbara N. ESTES (Jumonville)**

v.

**Donald O. ESTES.**

**No. 51300.**

Feb. 21, 1972.

Rehearing Denied March 27, 1972.

Burton, Roberts & Ward, John F. Ward, Jr., Baton Rouge, Duval, Arceneaux & Lewis, Claude B. Duval, Houma, for plaintiff-appellee-applicant.

Howell & Brown, William H. Brown, Baton Rouge, for defendant-appellant-respondent.

TATE, Justice.

This is a child custody proceeding. The essential issue concerns the proof necessary for a mother to regain custody of two young children when she had *temporarily* surrendered custody of them to the children's father. Reversing the trial court, the court of appeal held that the mother had the burden to prove that a change (restoring custody to her) would benefit the children. Since both parents could provide equally good homes, the court felt that the mother had not borne such burden. 244 So.2d 902 (La.App. 1st Cir. 1971), certiorari granted 258 La. 354, 246 So.2d 679 (1971).

The mother was initially awarded custody of the two small children of the marriage, then aged 4 and 2, at the time she obtained a judicial separation on the ground of abandonment in February 1964. Custody was maintained in her when a final divorce was decreed in May 1965.

In May 1966, the mother and father filed a joint petition by which they secured an

order amending the custody decree so as to give custody of the children to the father "until such time as [the mother] can provide a proper home for said children." The record explains that, at the time, the mother was unemployed and unable to provide for the children. Thereafter, the mother regularly visited the children, and the children visited with her at least one weekend per month.

The mother was remarried on August 5, 1967. She filed a rule to regain custody of the children in June 1969, a little less than two years later. She explains that the delay was due in part to her former husband being in California with the children when she had first remarried, to her unwillingness to interrupt their school year upon their return, to her pregnancy, and to a serious illness of her second husband.

As both the trial and appellate courts found, the homes of both parents are good, comfortable, and moral. The children are loved by both parents, and each parent can provide a fine home for them.

The trial court, which saw and heard the witnesses and which interviewed the children (then aged 10 and 8), concluded that returning custody of the children to their mother is "in the ultimate best interest of two very lovely little children." The court pointed out that the consent amendment of 1966 was intended by the parties to transfer custody temporarily only, with the children to be returned to the mother at such

time as she could provide for them a good and comfortable home.

The court further stated that: "It finds and believes from the record, pleadings, and testimony of this case that the mother of these children loves them dearly, as does the father, that she has visited them regularly, cared for them and provided for them regularly, has never abandoned her children nor neglected the same and that as a mother of children of tender years, she has a greater right to the custody thereof than does the father."

In reversing, the court of appeal felt that the mother's delay in attempting to regain custody of the children forfeited any rights she had under the temporary-custody agreement to regain the custody of the children. It concluded that the mother in such circumstances "must bear the burden of proving that a change in custody is in the best interest of the children" and that she had failed to do so, since both homes were equally good.

■ The court of appeal erred in reversing the trial court's considered determination under such circumstances. In Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), we summarized the applicable legal principles as follows: (extensive citation of authorities omitted):

"(1) The paramount consideration in determining to whom custody should be

granted is always the welfare of the children. * * *

"(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. * * *

"(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to *justify* removing them from the environment to which they are accustomed. * * *

"(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. * * *"

The trial court correctly held that, under the recited circumstances, the courts should apply the usual presumption that the interest of the children of tender years is best served by granting the mother the custody of the children of the marriage. This was, in fact, done at the time of the initial separation and divorce. The mother's temporary inability to care for them due to economic distress [1] did not transform her into an unworthy parent, nor alter her custody as being in the ultimate best interest of these young children.

It is true that stability in environment is an important value, so that a party seeking to change a considered determination of the *permanent* custody of children bears a heavy burden to justify such change as being in their best interest. Nevertheless, here, both parents and children realized at the time of the 1966 change of custody that it was temporary only.

1. In the proffer of testimony the defendant husband suggested other reasons for the temporary change of custody, but we agree with the trial court that this testimony is irrelevant as constituting a belated attempt to contradict the joint pleadings filed in 1966. Further, this proffer of testimony shows that the intention of counsel at the time the 1966 pleadings were framed was to permit the mother to take the children back when she could again provide a suitable home for them.

There is no showing that, because of this temporary custody, the children's ultimate best welfare is not better served by returning them to their mother's care in accord with the initial custody determination and in accord with their justified expectations. Their ties with their mother remained warm and strong through their repeated visitations to and with her, and through her love and care for them.

See: Nugent v. Nugent, 232 So.2d 521 (La.App. 3d Cir. 1970); Malpica v. Puig, 166 So.2d 546 (La.App. 4th Cir. 1964); Tullier v. Tullier, 140 So.2d 916 (La.App. 4th Cir. 1962).

We do not hold that variant circumstances might never justify a denial of the return of children to their mother when she has temporarily surrendered their custody. We hold only that no such exceptional circumstances are shown here.

Further, an appellate court must give great weight to the trial court's considered determination of custody. If the trial court decides which parent should best have custody for the children's sake after it has applied correct principles of law, a reviewing court should disturb such custody determination only where there is a clear abuse of the trial court's discretion in the matter, even though reasonable minds might differ as to the children's best interest under the variant circumstances suggested by a particular record.

Accordingly, the judgment of the court of appeal is reversed, and the trial court's decree awarding custody to the mother and providing for visitation rights of the father is reinstated and is affirmed. The defendant father is to pay all costs of these proceedings.

Court of Appeal decree annulled, and trial court judgment reinstated.

BARHAM, Justice (dissenting).

I am of the opinion that the majority has made a grave error of law in its determination in this case, and that its reasoning, the jurisprudence, and, even more important, the Code do not support the result it reaches.

The mother and father of two small children separated in fact on December 30, 1963. When the mother filed for legal separation, she was apparently granted the provisional custody of the children, and the judgment of separation of February 25, 1964, maintained that custody as did a divorce judgment rendered on May 4, 1965. Each judgment of custody was uncontested by the defendant, and the resolution of other matters ancillary to the separation and the divorce were resolved amicably.

On March 27, 1966, the plaintiff mother voluntarily surrendered the custody of the children to the defendant father, who had meanwhile married his second and present wife. On joint motion of both parties that voluntary surrender by the mother was

given the form of a judgment of court by which the custody of the two minor children was transferred to the father until such time as the mother could provide a proper home for them. It is conceded that the mother was without moral fault, but that because of work, absence from home, and other such circumstances she felt the children would be better cared for by the father.

On August 5, 1967, a little more than a year later, the mother married her present husband, and it was apparently recognized by the Court of Appeal and the trial court that, from that point on, whatever disability she had at the time of the surrender of the children had disappeared. However, as the Court of Appeal found, she waited two more years before she filed this rule to have custody returned to her. She explained that her delay in bringing the action was caused by her unwillingness to have the children change schools in the fall of 1967, by the birth of a child to her in the summer of 1968, by her second husband's illness in the winter of 1968, and by the unavailability of her lawyer in the spring of 1969.

It is to be noted that when the rule for change of custody was heard, the minor children were then aged ten and eight, and that they had been in their father's custody for over three years in a home where his second wife provided the mother figure

and a child born of that second marriage offered another sibling relationship. As noted previously, the mother was at that time remarried and also had a child of her second marriage.

The trial court and the Court of Appeal found that both sets of parents offered good, comfortable, moral, and secure homes. The trial court, after deciding that there was no difference in the parental relationships and other qualities which could be offered in either home, determined that the consent decree of 1966 "must be given full force, weight and effect". The Court of Appeal believed the trial judge committed manifest error in awarding custody on this basis. That court was correct in holding that a consent judgment changing a judgment of permanent custody should not be accorded such dignity as was given it by the trial court. The trial court made no finding of fact which shows that the best interest of the children would be served by a change of custody in this case, but simply *concluded* that the ultimate best interest of the children would be served by returning them to their mother. The majority opinion reverses the Court of Appeal judgment and reinstates the trial court judgment.

The majority totally errs in citing one of the propositions it quotes as determinative of the issue before us. That quote speaks

of the paramount right of the mother in the cases where change of custody is sought *from the mother to the father,* and is here inapplicable. The other three legal principles cited by the majority are correct, but they would support a determination contrary to that made by it. Although our Civil Code provides in Article 146 that the mother is preferred over the father when the "provisional keeping is claimed by both", once custody is adjudicated on a permanent basis our courts have said repeatedly, as the majority has recognized, that *the paramount consideration in the determination of custody is the best interest of the child.* It is not to overstate the proposition to say that the *sole concern* of a court in *determining change of custody* is the consideration of what will best serve the interest of the minor children.

I am in complete agreement with the majority's statement of law that after a trial court has determined permanent custody, " * * * the party seeking the change bears a *heavy burden* of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed". (Emphasis here and elsewhere has been supplied.) Children should not be uprooted and removed from a loving and secure environment afforded by one parent unless there are exceptional and substantial reasons advantageous to the welfare of the

children for making the change. In deciding what are the good and substantial reasons for change of child custody, if there is any legal advantage with either parent it is with the one in whose custody the children have been for some time.

I would also agree with the majority's legal proposition that when the trial judge determines upon *evaluation* of the evidence what will serve the best interests of the child, his determination is entitled to great weight. However, as the Court of Appeal found and as the majority must note, the trial court here made no evaluation to support its decision that removal from the father's home to the mother's home would serve the best interest of the children. The majority falls into legal error under the facts of this case in its statement: " * * * The courts should apply the *usual* presumption that the interest of the children of tender years [ten and eight] is best served by granting the mother the custody of the children of the marriage." The literally Janus-tongued part of the opinion is this: The majority recognizes that *a party seeking to change permanent custody "bears a heavy burden to justify such change"* as being in the children's best interest, which would place that burden on the mother here; but in the next paragraph the majority says, shifting the burden to the father: *"There is no showing that, because of this temporary custody* [three years with the father], *the chil-*

*dren's ultimate best welfare is not better served by returning them* to their mother's care in accord with the initial custody determination and in accord with their [whose?] justified expectations." The majority then discusses the appellate court's interference with "the trial court's considered determination of custody * * * after it has applied correct principles of law". As I have previously noted, these are the two failings of the trial court: It erred as a matter of law, and it made no factual evaluation which would warrant a change of custody under the correct legal principles.

Neither the trial court nor the majority has given one single reason why the ultimate best welfare of these children will be served by removing them from an ideal home situation where they lived happily and securely over three years. Both have simply decided that because the mother is *woman,* some superior right rides with her. The preference of the mother under Civil Code Article 146 when "provisional keeping is claimed by both" has been carried far beyond its purpose, which is simply to resolve the difficulties of child custody in the immediacy of the breakup of a marriage. In this day and time there is less and less reason for granting preference to the mother. The physiological basis which once existed for very young infants has almost disappeared. For infants not nursing there is no physiological basis. The social basis for favoring the mother which once existed because the mother was the homemaker and child-tender while the father was the breadwinner has almost totally disappeared.*

In the recent case of Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, the statutory preference accorded the father as administrator of his minor's estate was struck down by the United States Supreme Court. The court held that the discriminatory classification on the basis of sex was a denial of equal protection, saying: "* * * By providing dissimilar treatment for men and women who are thus similarly situated, the challenged section violates the Equal Protection Clause."

---

* Time Magazine, January 28, 1972, quoting from a number of sources states: "Though many state laws make sex irrelevant in determining custody, judges have traditionally taken the view that only mothers can give youngsters the attention they need. The theory has been that mothers are inherently better fit to provide care and are at home regularly enough to ensure that the children get it. These days, however, Women's Lib has led many men and women to question conventional notions of sex roles. Increasing numbers of wives have simply abandoned home and hearth, leaving husband and children to fend for themselves (TIME, Dec. 20). There are other factors too. Since increasing numbers of women work, the traditional rationale for giving women custody now applies to fewer cases. Ralph Podell, chairman-elect of the American Bar Association's family law section, reports that more men are asking for custody and more judges are granting it."

The trial court here found that the father had for over three years provided, and was at the time of trial providing, excellent care and environment for the children. The record reflects that the children had even blossomed and improved in many respects during this custody. There was absolutely no showing that the children *needed* to be removed. Moreover, there was no showing that removal would be *beneficial* to the children. The trial court stated not one advantage which would obtain in the mother's custody. There was no basis for changing the custody of these children. The Court of Appeal was correct in reversing upon finding manifest error.

For the reasons stated I respectfully dissent.