316 So.2d 445 (1975)
Douglas D. LYNN, Plaintiff-Appellee,
v.
Julia Kendall LYNN, Defendant-Appellant.
No. 4924.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
Rehearing Denied July 24, 1975.
Writ Refused October 13, 1975.
*446 Mouton, Roy, Carmouche & Hailey by H. Purvis Carmouche, Lafayette, for defendant-appellant.
J. Minos Simon and Louis M. Corne, Lafayette, for plaintiff-appellee.
Before FRUGE, HOOD and WATSON, JJ.
FRUGE, Judge.
Defendant Julia Kendall Lynn appeals a judgment transferring custody of her minor son Spencer Kendall Lynn to Douglas D. Lynn who is her former husband and the child's father. We reverse.
Douglas D. Lynn and Julia Kendall Lynn were granted a separation from bed and board in Lafayette, Louisiana, on September 20, 1968. At that time custody of Spencer Lynn, the only child of the marriage, was awarded to Mrs. Lynn. Mrs. Lynn was also awarded alimony pendente lite and child support.
After the judgment of separation Mrs. Lynn and the minor child moved to Houston, Texas. On June 12, 1970, Douglas Lynn was granted a final divorce based on living separate and apart for more than a year and sixty days. At this time Mr. Lynn did not petition for custody. Custody was again awarded to Mrs. Lynn and she was granted alimony and child support in the amount of $1,000 per month. This award was later reduced to $800 per month by mutual agreement of the parties.
Some time subsequent to the granting of the divorce Mrs. Lynn moved to California where she and the minor, Spencer Lynn, have since resided.
In 1971 Douglas Lynn filed a petition for the custody of Spencer Lynn. This petition was later dismissed at Mr. Lynn's request.
In July of 1973 Julia Lynn filed in Lafayette for past due alimony and support for an eight-month period in the amount of $6,400. In September Douglas Lynn filed an answer requesting that alimony and child support be set aside and that custody be changed. Julia Lynn excepted to the jurisdiction of the court on the custody question.
When the matter came up for hearing Douglas Lynn dismissed his suit for custody. Judgment was granted in favor of Julia Lynn for past due alimony and child support in the amount of $6,900. This judgment was rendered in September of 1973.
On May 1, 1974, Julia Lynn again filed to make alimony and support payments executory. The petition alleged that Douglas Lynn had made no payments since the September, 1973, judgment. Douglas Lynn responded *447 by filing a motion to terminate child support and change custody. Julia Lynn again excepted to the jurisdiction of the court to change custody.
Julia Lynn dismissed the rule to make child support and alimony executory on September 20, 1974. The custody matter was heard September 24, 1974. The trial court overruled the declinatory exception to jurisdiction and after hearing the evidence rendered judgment transferring the custody of Spencer Kendall Lynn to the father, Douglas Lynn. It is from this judgment that Mrs. Lynn has appealed.
The appellant specifies two errors: (1) the trial court erred in overruling her declinatory exception of jurisdiction, and (2) the court, on the merits, erred in transferring custody to Mr. Lynn.
JURISDICTION
We deal first with the jurisdiction of the court.
Appellant contends that the minor child is in California and has not been in Louisiana since the institution of the rule to change custody in June of 1973. She further contends that neither she nor the child is domiciled in Louisiana as they have been residing in California for several years. This argument of non-jurisdiction is based on Article 10(5) of the Code of Civil Procedure, which provides as follows:
"A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:
. . . . . .
(5) A proceeding to obtain legal custody of a minor if he is domiciled in, or is in, this state; . . . "
The father does not contend that the minor child, Spencer Lynn, is domiciled in or has been in the State of Louisiana, during the course of these proceedings. He contends that the court has jurisdiction to award custody to him based on the continuing jurisdiction of a court to decide matters incidental to a divorce. In the alternative, he contends that appellant has consented to the jurisdiction of the court by making a general appearance.
CONSENT
In Douglas v. Douglas, 146 So.2d 227 (La.App. 3rd Cir. 1962), this court held that jurisdiction over the status, with which we are here concerned, could not be conferred by the consent of the parties. In that case jurisdiction over status was held to be a matter of jurisdiction over subject matter which under Article 3 of the Code of Civil Procedure "cannot be conferred by consent of the parties." Although the court in Douglas was not specifically concerned with the matter of custody in this holding, we think it applies to all matters of jurisdiction over status including custody. We are in full accord with that holding and follow it here. Thus the fact that the trial court had personal jurisdiction over Julia Lynn because of a general appearance made through counsel does not confer the court with jurisdiction over the status of her minor child.
CONTINUING JURISDICTION
Douglas Lynn urges that the trial court obtained jurisdiction in this matter when the parties mutually petitioned the court for separation and divorce. He contends that the court retains jurisdiction in all matters incidental to the divorce proceedings including the question of custody. He cites Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); State ex rel. Marston v. Marston, 223 La. 1046, 67 So.2d 587 (1953); Wheeler v. Wheeler, 184 La. 689, 167 So. 191 (1936); and Lukianoff v. Lukianoff, 166 La. 219, 116 So. 890 (1928).
Appellant, relying on Nowlin v. McGee, 180 So.2d 72 (La.App. 2nd Cir. 1965), writ refused, 248 La. 527, 180 So.2d 541, argues that there is no continuing jurisdiction in the trial court with regard to custody matters. She contends there is jurisdiction in *448 a custody matter only when the requirements of Code of Civil Procedure article 10(5) are met.
It appears that there is a split of opinion among the courts of appeal of this state on the question of continuing jurisdiction with regard to custody matters. In Nowlin v. McGee, supra, and in Stewart v. Stewart, 233 So.2d 305 (La.App. 1st Cir. 1970), the First and Second Circuits faced the exact issue posed here. Following a Louisiana divorce the parent with custody removed to another state. The non-custodial parent petitioned the divorce court for a change of custody. In both cases the court of appeal held that there was no jurisdiction. The basis of the holding was stated as follows:
"Numerous cases are cited in support of the theory that Louisiana has continuing jurisdiction over all matters incidental to the divorce proceedings. See Lukianoff v. Ludianoff, 166 La. 219, 116 So. 890 (1928); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); Graves v. Graves (La.App. 2 Cir., 1960) 122 So.2d 350; Blackburn v. Blackburn (La.App. 2 Cir., 1964), 168 So.2d 898; Wheeler v. Wheeler, 184 La. 689, 167 So. 191 (1936). Examination of these authorities convinces us there are distinguishing features in each of the cited cases.
The contrary position adopted by relatrix is that once the final divorce was rendered and she was awarded custody of her children she was at liberty to change her domicile and that of the children to Texas and that thenceforth the Louisiana court is without jurisdiction to change or modify the custody order. This contention is in accord with the decisions of the Louisiana Supreme Court in State ex rel. Huhn v. Huhn, 224 La. 591, 70 So.2d 391 (1954); and with that In re Ackenhausen (La.App. 4 Cir., 1962) 146 So.2d 37, affirmed by the Louisiana Supreme Court in 244 La. 730, 154 So.2d 380 (1963). Both of the cited cases quoted from the United States Supreme Court case of People of State of N. Y. ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133, in which it was held that if the court of the state which rendered the judgment (of custody) had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause." Nowlin v. McGee, 180 So.2d 72, 73, also quoted in Stewart v. Stewart, 233 So.2d 305, 308-09.
In Pattison v. Pattison, 208 So.2d 395 (La.App. 4th Cir. 1968), the Fourth Circuit indicated its disagreement with the holding in Nowlin v. McGee, supra. In that case the jurisdictional issue was whether a Louisiana divorce court retained jurisdiction to order a custodial parent to return with the child to Louisiana after they have moved out of the state. The court stated:
"However, in the recent case of Nowlin v. McGee, La.App., 180 So.2d 72, writs refused 248 La. 527, 180 So.2d 541, it was held that a Louisiana court did not have jurisdiction to modify its previous custody judgment where the parent having legal custody of the minor children had removed them from this state. However, we conclude the Supreme Court decisions, cited above, are controlling in this matter." Pattison v. Pattison, 208 So.2d 395, 396. (The Supreme Court cases referred to include those relied on by appellee in this case.)
It appears, therefore, that with regard to custody matters the First and Second Circuits do not recognize the continuing jurisdiction of the divorce court while the Fourth Circuit does.
Research has not uncovered any Third Circuit cases which have dealt with the issue posed here. However, in Lege v. Lege, 228 So.2d 202 (La.App. 3rd Cir. 1969), we recognized an Alabama divorce court's continuing jurisdiction in a situation which was the inverse of that presented here. In Lege, following an Alabama *449 divorce, the mother moved to Louisiana with the children. She had been granted custody in the divorce proceedings. After the move the father instituted proceedings and was granted a change of custody in the court which rendered the divorce. The issue facing this court was whether the Alabama custody modification was entitled to full faith and credit under the U.S. Constitution.
Writing for the court, Judge (now Justice) Tate held that:
"The Louisiana court is not required to enforce the Alabama modification decree, but it may redetermine the question on the basis of present circumstances in the interest of the best welfare of the child, just as could an Alabama court. Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2L.Ed.2d 1008 (1958)."
Nevertheless, the court went on to hold that:
"At the evidentiary hearing, under the presently preponderant view, the mother bears the burden of proving that a change of custody from the father to her is in the best interest of the children; for the Alabama court had continuing jurisdiction to render the modification decree, upon proper notice to the wife, by virtue of the personal jurisdiction over her initially acquired at the time of the original divorce proceedings."
The decision thus recognizes the continuing jurisdiction of a foreign forum in the inverse of the situation presented here.
As we noted above appellee relies on the Supreme Court cases of Wilmot v. Wilmot; State ex rel. Marston; Wheeler v. Wheeler; and Lukianoff v. Lukianoff, all cited supra. Although the Second Circuit in Nowlin v. McGee, supra, indicated that there are distinguishing features in those cases from the issue presented there (and here), we think it is clear that they stand for the general proposition that a court which rendered a separation or divorce retains jurisdiction over all matters incident to the separation or divorce, including custody.
The validity of this rule must be determined in light of Huhn v. Huhn, 224 La. 591, 70 So.2d 391 (1954). See also In re Ackenhausen, 146 So.2d 37 (La.App. 4th Cir. 1962), affirmed (without discussion of foreign court's modification jurisdiction) 244 La. 730, 154 So.2d 380 (1963). Huhn is similar to Lege v. Lege, supra. The non-custodial parent was domiciled in the state where custody was originally granted. The custodial parent and child had moved to Louisiana after the original custody decree. The non-custodial parent obtained a custody modification. Relying on State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947), the court held that the custody modification was unenforceable in Louisiana because the non-Louisiana court was without jurisdiction. Although this appears to be a denial of the continuing jurisdiction of the foreign court, the decision is at least partially predicated on the fact that there was no notice of the modification proceedings to the custodial parent. We do not think the decision is to be construed as a repudiation of a Louisiana court's continuing jurisdiction in a custody matter where proper notice is given.
We think that the rule laid down by our Supreme Court that a court rendering a separation or divorce retains jurisdiction over all incidental matters, including custody, has not been overruled.[1] We conclude therefore that the trial court properly overryled defendant's exception to jurisdiction.
ON THE MERITS
The evidence in this case comes from three witnesses, some letters written by Julia *450 Lynn to one of the witnesses, and some affidavits presented on behalf of Julia Lynn. The witnesses were plaintiff Douglas Lynn and two former friends of Mrs. Lynn's from Houston, Nancy Glass and Sandra Kelly.
The appellee Douglas Lynn is now remarried and at the time of trial had an 18-month-old son by this marriage and a stepson. He testified that the minor child Spencer was nine years old at the time of trial of this rule. He stated that since his divorce from Julia Lynn he noticed a complete personality change in her, in that she assumed no responsibility for raising Spencer and emphasizing values to the child. Mr. Lynn testified that he visited the child in California in November of 1972 and found him in the care of "three teenage hippy-type follows" while Julia Lynn was in Hawaii. Mr. Lynn brought Spencer back to Lafayette at that time and attempted to enroll him in Ascension Day School but that Spencer was not qualified for the grade level he should be in. The boy returned to California in December of 1972.
After that visit the only other time Mr. Lynn saw Spencer was a month before trial. He stated that the child was injured in an accident and he went to check on him.
Mr. Lynn testified that he had the financial means to provide his son with a good education and would give the son a good religious upbringing if custody were awarded to him.
Mr. Lynn admitted that his stepson was receiving psychiatric care at the time of trial and that he had not been sending child support or alimony payments to Julia Lynn. He knew that she was on welfare. He admitted that he had refused to pay a dental bill for Spencer with the reply that he was sending $400 per month child support payments for this purpose. The record reflects that no such payments were being made at the time this reply was sent.
Mr. Lynn also testified that he had refused to allow Spencer to visit with him at Christmas in 1973. He stated that his stepson would not be with him and his new wife during this period and he did not think it fair to the stepson for Spencer to be with them at that time.
Mr. Lynn stated that he operated an oil company in Lafayette and that his business takes him to Houston or New Orleans about once a month.
Mrs. Nancy Glass testified that she had known Julia Lynn since 1957 and that she had observed changes in her. She last saw Julia Lynn in October of 1973 in Houston. She stated that what Julia Lynn wanted for Spencer when she lived in Houston and what she wanted for him in October of 1973 was completely different. Her ambition for Spencer was that he go to a "free school" and not get a "regimented education."
Mrs. Sandra Kelly from Houston testified that she knew Julia and Spencer Lynn and that she had last seen them in October of 1973. She stated that Julia Lynn had changed considerably since she had lived in Houston. She was no longer interested in business or her grooming and most of her ideas were in the areas of health food and "watching the stars." Mrs. Kelly stated that Spencer was not in school in October of 1973.
The most concrete evidence introduced was a series of letters written by Julia Lynn to Nancy Glass. Although some of the letters are undated, they were apparently written in 1972 and 1973. Counsel for Mrs. Lynn objected to the introduction of these letters but has waived the objection on appeal.
It is difficult to present an accurate summarization of these letters. There is reference to conduct which this court cannot approve but on the whole the letters reveal that Julia Lynn is an open and sensitive person who has rejected the traditional framework of society. They show that *451 Julia Lynn has a keen interest and love for her son and that she is interested in his education, though she does not desire a traditional "regimented" education for him. There are references to the fact that Spencer has been enrolled in the California public school system and that Mrs. Lynn took part in his education by helping out at school. The letters also show that Spencer was not in school for certain periods of time.
We note, at this point, that all of the evidence presented regarding Julia Lynn involved incidents which occurred more than a year prior to the trial of this rule. Julia Lynn did not herself testify. No one closely acquainted with Mrs. Lynn's circumstances in California testified. Although Nancy Glass and Sandra Kelly saw Mrs. Lynn for a short period in Houston in 1973, there is no indication of any contact with Mrs. Lynn other than the letters to Nancy Glass.
The legal principles to be applied in a custody matter were set out by the Supreme Court in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). We quote:
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children.
(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father.
(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed.
(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof." 254 So.2d at 605 (citations omitted). See also Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972); Abreo v. Abreo, 281 So.2d 695 (La.1973); Nethkin v. Nethkin, 307 So.2d 563 (La.1975).
The record before us does not reflect whether there has been a considered decree of custody in this case. The record reflects that upon divorce, custody was rendered to Julia Lynn by consent of Douglas Lynn. But the record does not contain the custody proceedings upon the separation of the parties. We will proceed on the basis that there has been no previous considered decree.[2]
As stated in Estes and Fulco, supra, the paramount consideration is the *452 welfare of the child. The general rule in this regard is that the best interest of the child is to grant custody to the mother especially when the children are of tender age. Futhermore, the determination of the trial judge in custody matters is entitled to great weight and is to be disturbed only on a showing of abuse of discretion.
Taking all of these factors into consideration, we think the trial court erred in transferring custody of Spencer Lynn to the father. In his reasons for judgment the trial court indicated that he was primarily concerned with the education of the child. After stating that "taken as a whole, the letters are not that damaging. . ." the court concluded:
"What this Court is trying to say is that the Court wishes there was an alternative for the child other than the custody being placed in either parent, however, the Court feels that from the testimony of the father, that he would place the child in a proper school, and apparently, from the reading of the letters, that the child has not received a proper type of education, at least, according to the standards of this community and of this Court."
Although the record reflects that Spencer was out of school for certain periods of time, it appears that the child was in California schools most of the time. The longest period in which he was out of school was in the fall of 1973. This absence was at least partially occasioned by the fact that Julia Lynn had to return to Louisiana to sue for alimony and child support.
The trial judge was also apparently concerned about the kind of education the boy was getting. The record shows that Spencer was enrolled in the public schools in California. The fact that those schools have a different format and teach different courses than schools in Louisiana should have no bearing in this custody matter. It is not for us to judge the relative merits of the school systems.
Although there is no considered decree in this case, this court must consider the best welfare of the child. Spencer Lynn, now nine, has been in the custody of his mother since he was about three years old. We should not be quick to disrupt this relationship.[3] This is particularly true where there is no clear showing that placing the child with the father would provide a better environment. We think it crucially important in this case that Melinda Lynn, the present wife of Douglas Lynn, did not testify. If custody is granted Douglas Lynn there is no doubt that Spencer would spend a great deal of time under the care and supervision of Melinda Lynn. Yet we have no indication in the record that Melinda Lynn would welcome Spencer into her home.
In Berry v. Berry, 307 So.2d 821, 824 (La.App. 3rd Cir. 1975) this court in applying the Estes and Fulco rules stated:
"Courts will deny custody to the mother when the circumstances are such that the children's best interest might be otherwise served."
In the case before us the record does not reflect that Spencer Lynn's best interest would be served by denying custody to the mother. In the first place, there is no evidence in the record which indicates that Mrs. Lynn was not providing a *453 good home for Spencer at the time of the trial of the motion. The Supreme Court in Fulco, supra, made it clear that the type of home being provided at the time of trial is the pertinent issue.[4] While Mrs. Lynn did not appear to show that a good home was being provided, the burden is not on her to do so.
Furthermore, despite all her faults, the record reflects a genuine interest and concern on the part of Julia Lynn for her child. There is no indication of any neglect of affection of attention. Rather, her letters to Nancy Glass show a mother's love for her child.
On the other hand Douglas Lynn has not shown the concern of an interested father. He has refused to make child support payments to take care of Spencer. He refused to pay a dental bill at a time when he knew he was making no support payments. He refused support payments even though he knew Julia Lynn was on welfare. He also refused to allow his son to visit with him after a period of long absence from seeing him. This, coupled with the fact that there is no indication that appellee's present wife, Melinda Lynn, would be willing to properly care for and supervise Spencer, convinces us that the best interests of the child require that custody remain in the mother.
For the reasons assigned, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of the defendant Julia Kendall Lynn, dismissing the plaintiff's motion to change custody and terminate child support. Costs of this appeal are assessed to appellee.
Reversed.
NOTES
[1] In Imperial v. Hardy, 302 So.2d 5 (1974), the Supreme Court recently reaffirmed the court's continuing jurisdiction in child support matters. However, no custody issue was presented.
[2] This court has held that a judgment by default is a considered decree where evidence is introduced establishing the petitioning party's right to custody. Southern v. Southern, 308 So.2d 424 (La.App. 3rd Cir. 1975). Where no evidence is offered at a default or consent judgment granting custody, we have held there is not a considered decree. Swann v. Young, 311 So.2d 617 (La.App. 3rd Cir. 1975). See also, Gulino v. Gulino, 303 So.2d 299 (La.App. 1st Cir. 1974).
[3] The Supreme Court noted in (Fulco v. Fulco,) 254 So.2d 603, 605n 1: "Nevertheless, the possibility of a further change in custody illustrates a reason for the general policy of continuing custody of children in one parent rather than changing them readily from parent to parent, or at least unsettling their stable environment through repeated custody rules resulting from the altercations and accusations of the parents following the initial custody determination."
[4] The court in Fulco stated: "These young children have been with their mother since they were born. There is no showing that the mother was not providing a good and moral home for them at the time of the custody hearing below, nor that any conduct on her part is having any adverse effect upon their welfare. The purpose of a custody determination is not to punish a parent for any past misconduct, it is rather to serve the best interests of the children of the marriage." 254 So.2d at 606.