DOMENGEAUX, Judge.
This appeal concerns itself with the permanent custody of four minor children, issue of the marriage between Brenda Gail Fontenot and Wayne Johnson. The children are Mark, age 10, Steven, age 9, Brian, age 8, and Evelyn, age 4.
This instant action was commenced by the plaintiff mother by rule seeking a return of the custody of the four children. The defendant husband responded to the rule and sought a reaffirmation of his custody rights in the children, and alternatively that the children be awarded to his mother and stepfather, Mr. and, Mrs. William K. Paugh. The Paughs intervened in this rule, seeking the custody themselves. After trial on the rule, the District Judge awarded the permanent custody of the children to the intervenors. The only appellant herein is the mother, Brenda Gail Fontenot. There is no answer to the appeal by any of the other parties.
*151 The facts show that Wayne Johnson and Brenda Gail Fontenot were married in 1963 when he was 21 years of age and she was 16. They both came from and lived in Oakdale, Allen Parish, Louisiana, which is also the place of residence of the interve-nors, Mr. and Mrs. Paugh. The first four years or so of Wayne and Brenda’s marriage were fairly normal; however, the last five years thereof were ones of marital difficulty between the parties with at least three periods of physical separation, including the filing of two separation suits by the wife. It is rather clearly established that during the later years of the marriage, disagreements, fighting, separations and reconciliations permeated the association between the two. There is some evidence of physical abuse on the part of Wayne towards Brenda, although the extent and severity thereof is in dispute. The evidence also shows that Brenda dated other men. In the latter regard the record is inconclusive as to whether these instances occurred during the periods when the parties lived together or only when they were physically separated, as contended by Brenda. One matter is very clear and that is that the grandparent interve-nors during all of these periods of difficulties were greatly solicitous of the welfare of the children and attempted to help the young couple. Further, the children lived with the grandparents a goodly part of the time, and during each physical separation of the parties the children were living with the grandparents until reconciliations could be effected. All parties agree that the grandparents from the beginning were exemplary in their concern and care of the children.
The sequence of events commencing in March, 1973, are particularly significant in connection with this present custody case. On March IS, 1973, Brenda filed suit for legal separation in the captioned District Court on the grounds of cruelty and sought custody of the children and child support. Wayne reconvened seeking a legal separation on the grounds of abandonment. That lawsuit resulted in a consent judgment wherein Wayne was granted the separation and Brenda was awarded the custody of the children with Wayne being condemned to pay child support in the amount of $75.-00 per month. Thereafter the parties reconciled and lived together for some period of time. Wayne contends that that period was only three days, whereas Brenda contends that the period lasted almost two weeks.
On May 23, 1973, Brenda, after sending the three older children to school, had one of her girlfriends drive her to Alexandria, Louisiana, where she boarded a bus to Pine Bluff, Arkansas, leaving the children behind, informing no one of her departure. She did not tell her children that she was leaving when they went to school that morning. The youngest child was left with a neighbor with instructions to bring the child to Brenda’s sister’s home. It is clear that no one, not even the friend who drove her to Alexandria, had any idea where Brenda was going. Brenda did not return to Oakdale, Louisiana, until March, 1974, some ten months later, at which time she saw her children again for the first time since leaving them. For six weeks after she left Oakdale there was no contact with the children or with anyone else from the Oakdale area. During the ten months of absence Brenda sent one card to the children and talked to them three times on the telephone, although she regularly spoke by telephone and corresponded with other friends in the Oakdale area after the initial six weeks’ absence.
On June 27, 1973, Wayne Johnson obtained the legal custody of his children in a suit filed in the within District Court. Substituted service was made on Brenda through an attorney on Brenda’s parents, who like all of the other parties herein, lived in the Oakdale area. Wayne has had the legal custody of these children until the time of the decision in this case; however, the physical custody of the children has been with the intervenors, Mr. and Mrs. *152 Paugh since May, 1973, some 29 months. It is undisputed that the children were well cared for by the grandparents and were happy with the situation. They attended church regularly and participated in various school and church functions, are doing very well in school, and are in excellent health.
During the ten month period when Brenda was in Arkansas the evidence shows that she kept steady company with a man named James (not further identified) and that she intended to marry him. She also secured an Arkansas divorce from Wayne, with Wayne making an appearance through an attorney. The question of the custody of the children was not litigated or passed upon in the Arkansas court.
Brenda moved to Marshall, Texas, after returning to Oakdale, Louisiana, and married her present husband, Johnny Grimes, on August 29, 1974. On October 20, 1974, she filed the present rule seeking custody of her children, which was tried on December 11, 1974. Shortly before the hearing on the rule Brenda and her new husband moved into a rented home in Marshall, Texas. Her new husband is willing to have Brenda’s children live with them. Mr. Grimes is himself divorced and paying child support to his former wife for the support of his five year old daughter. He is employed and nets approximately $700.00 per month. In the meantime, Wayne Johnson has remarried, but he and his present wife remained together for only some thirty days, and it appears that this marriage is headed for legal separation.
The trial judge, in his reasons for judgment awarding the custody to the grandparents-intervenors, stated:
“ . . . It is the opinion of this Court that the plaintiff-mother presently lacks the emotional stability required to make her fit to properly raise and care for said minors. This conclusion is based upon both her past performance and her demeanor in the courtroom both on and off the witness stand. It is further the opinion of the Court that the defendant-father is unfit at the present time to care for said minors due to the chaotic nature of his own matrimonial affairs and due to the nature of his employment; and that he is totally dependent upon intervenors to care for said minors ..."
He further stated in his reasons that he adopted as written reasons the statement of facts and legal arguments and conclusions of the attorneys for the intervenors. The record does not contain the referred to statement of facts and legal arguments.
The question to be decided is whether the plaintiff-mother is to be deprived of the custody of her four minor children because it is in the children’s best interests to be placed with the grandparents.
It is well settled of course that a parent has the paramount right to custody and may be deprived of that custody only when there are compelling reasons, and when the parent competes with non-parents of the child or children the parent’s right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights. Wood v. Beard, 290 So.2d 675 (La.1974), and cases cited therein.
Although the trial judge did not elaborate upon the specific reasons given for placing the permanent custody with the grandparents, it is evident from a review of the record that he placed great emphasis on the circumstances under which the mother left Oakdale on May 23, 1973, as described hereinabove. Although we are not prepared to state that the circumstances at that time amounted to a “legal” abandonment of the children, the mother’s actions were certainly a physical abandonment, and amount to obvious irresponsibility and immature judgment.
The cold record does not show us what “her demeanor in the courtroom both on and off the witness stand” was, as stated *153 by the trial judge, but certainly the trial judge, who saw, heard, and observed her, must have had grave doubts as to her emotional stability.
Under all of the circumstances of this case, the determinations of the trial •judge are entitled to great weight.
Of additional significance in this case is the close sequence of the mother’s activities leading up to her present marital status at the time of trial on December 11, 1974. By her own admission she was preparing to marry a man by the name of James in Arkansas. She suddenly moved to Marshall, Texas, and rather quickly and unexpectedly married another man, her present husband, Mr. Grimes. In light of this background on the question of her present circumstances, the trial judge apparently thought, and we concur, that there was not an ample showing on the part of the mother, that her present marital circumstances had reached a degree of stability warranting the removal of the children to Marshall, Texas. It is to be remembered that at the time of the trial, Brenda had been remarried for only about three months.
No issue is made as to the application of the “double burden” rule as set out in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955), and recognized in Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972), and Fulco v. Fulco, 259 La. 1122, 254 So. 2d 603 (1971). But to the extent that it may be applicable to the facts of this case, with reference to the Court’s award of custody to the father on June 27, 1973, we conclude that the appellant has failed in the burden thereunder.
As was stated in Estes, supra:
“When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed.”
Considering the totality of circumstances in this rule by plaintiff-mother to cause a change of custody, we find no abuse of discretion on the part of the trial judge in his findings “that the plaintiff-mother presently lacks the emotional stability required to make her fit to properly raise and care for said minors”. Therefore, for the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.

Affirmed.