291 So.2d 875 (1974)
David Royce HILLIARD, Plaintiff and Appellant,
v.
Wilda Lynn RICHARD, Defendant and Appellee.
No. 4451.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1974.
Rehearing Denied April 11, 1974.
*876 C. Kenneth Deshotel, Opelousas, for plaintiff-appellant.
Taylor & Trosclair, by Frank P. Trosclair, Jr., Opelousas, for defendant-appellee.
Before FRUGE, CULPEPPER and WATSON, J.
CULPEPPER, Judge.
This is a child custody case. Of the marriage between plaintiff and defendant in 1969, two minor daughters were born. They are now respectively four and five years of age.
On May 22, 1970, the husband secured a judgment of separation from the wife on the grounds of abandonment, but provisional custody of the children was awarded to the wife, LSA-C.C. Article 146.
On October 29, 1971, the husband secured a judgment of divorce on the grounds of the lapse of one year since the separation without a reconciliation. There is no mention of custody in the judgment of divorce, but the mother retained actual custody.
On May 16, 1972, pursuant to a petition by the father, custody of the children was removed from the mother and granted to the father in a judgment which used the following language:
"IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff, DAVID ROYCE HILLIARD, be and he is hereby granted the temporary care, custody and control of his minor children, KAREN LYNN HILLIARD and SUZETTE RENE HILLIARD.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this judgment is subject to review and revision at the proper time."
On January 16, 1973, the mother, who is now married to Richard Wedgeworth, filed the present rule for a change of custody, seeking to have the "temporary" custody award to the father terminated, and to have the court award to the mother the permanent custody. A hearing on this rule in February of 1973 resulted in judgment in favor of the mother on March 27, 1973. The father appealed.
In the recent case of Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972) our Supreme Court quoted from Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) the following summary of the applicable legal principles:
"`(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. * * *
*877 "`(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. * * *
"`(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. * * *
"`(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. * * *'"
The record shows that when plaintiff and defendant were married in 1969, she was 15 or 16 years of age. In April of 1970, which was about one month after the birth of her second child, she abandoned her husband and children. In the judgment of separation on May 22, 1970, she was awarded custody of the children and went to live in Eunice, where she worked as a barmaid in several lounges. She then moved to Lafayette where she again worked in a lounge, and then back to Eunice where she worked in other lounges. The evidence shows that during this period of time she engaged in adulterous relationships.
In February of 1971 she took the children and moved to Texas with a man named Robert Earl McBride. She again worked at lounges. Then in March of 1971 she started living with one Roy Sanchez. She became pregnant by Sanchez and then left him in August of 1971 and returned to Louisiana. Her illegitimate son by Sanchez was born on February 1, 1972, and she still has this child.
It is apparent that because of the immoral and unstable conduct of the mother, the district judge removed the children from her custody and granted them to the father under the "temporary" custody order on May 16, 1972 described above.
The district judge gave no written reasons either at the time he entered the "temporary" custody order in favor of the father on May 16, 1972, or at the time he changed the custody back to the mother on March 27, 1973. However, we can assume from the evidence that the judge removed the children from the mother and granted the father "temporary" custody in May of 1972 because of the immoral and unstable life which the mother had pursued for the preceding two years. The judge was apparently hopeful that after the mother married her present husband, Richard Wedgeworth, on April 15, 1972, she would change her lifestyle and establish a stable home to which the children could be returned.
At the hearing in February of 1973 on the mother's rule for a change of custody back to her, the district judge was apparently satisfied from the evidence that the mother had indeed changed her way of living and had established a stable home with Mr. Wedgeworth, and that this constituted such a change of circumstances as to justify removing them from the father and returning them to the mother.
The evidence shows that after the mother married Mr. Wedgeworth they established *878 their present home in Timpson, Texas in July of 1972. At the time of the hearing in February of 1973, Mr. Wedgeworth, who has not been previously married and is about 23 years of age, was working as a longshoreman earning about $5 per hour. They rented a house a few miles from town for $35 a month. The house has a large living room, large kitchen, two bedrooms, and bath. Living in this home were Mr. and Mrs. Wedgeworth and her illegitimate child by Roy Sanchez, which child Mr. Wedgeworth testified he plans to adopt.
The evidence also showed that since October of 1972 to the date of the hearing in February of 1973, the mother drove from Timpson, Texas to Opelousas, Louisiana every first and third week end to visit with her two daughters.
There is no evidence of any immoral conduct on the part of the mother, since her marriage to Mr. Wedgeworth.
The district judge was apparently satisfied that the mother had changed her life-style, that she and Mr. Wedgeworth had established a good marriage and a stable home, that the mother loves these little girls, and their best interests will be served by returning them to the custody of their mother.
As to the father's care of the children during the time he had custody after May of 1972, the evidence showed that he worked offshore 14 days a month and was at home the remainder of the month. He earned about $950 a month. He had remarried and was living with his wife and her daughter by a previous marriage in a three bedroom brick home. There is no question that the father was providing good care of the children. The only disadvantage being that he was working offshore two weeks out of each month.
This is a close case under the principles followed by our Supreme Court in Estes v. Estes, supra. Of course, the father emphasizes the principle that "the party seeking the change (of custody) bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed." The father also contends that in view of the history of two years of immoral and unstable conduct on the part of the mother and the relatively short period of one year of her new life with Mr. Wedgeworth, the evidence falls short of showing with any degree of certainty that the mother has actually changed and is now fit for custody.
On the other hand, the mother emphasizes the principle that the law presumes the mother to be better qualified for the care of the children, particularly daughters of a tender age. She relies heavily on the principle that the determination by the trial judge is entitled to great weight.
Considering the circumstances as a whole in the light of the principles quoted above from the Estes case, we are unable to say that the district judge abused his discretion. He saw and heard these witnesses, particularly the mother and her new husband, Mr. Wedgeworth, and concluded the best interests of the children will ultimately be served by returning them to the mother at this time. It is a question on which reasonable minds could differ, but we conclude it is not an abuse of discretion.
It is true the mother has failed to show that a continuation of custody in the father will be deleterious. But our understanding of Estes is that all four of the quoted principles need not be followed inflexibly in every case. The trial judge has the discretion to use these four principles as general guidelines. In the present case, the judge apparently decided the disadvantage of removing the children from the environment to which they had become accustomed in the father's home, was clearly outweighed by the advantages of their return to the *879 mother. Factors supporting this evaluation are the short period of time the children were with the father, the tender age and sex of the children, and the fact that the father is away from home two weeks of each month.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the appellant.
Affirmed.