322 So.2d 784 (1975)
Ella BOURQUE, Plaintiff-Appellee,
v.
David LEGER, Defendant-Appellant.
No. 5211.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Rehearing Denied December 17, 1975.
Writ Refused February 6, 1976.
Ronald E. Dauterive, Lafayette, for defendant-appellant.
Sandoz, Sandoz & Schiff by Leslie J. Schiff, Opelousas, for plaintiff-appellee.
Ella Edwards, in pro per.
Before HOOD, HUMPHRIES and PETERS, JJ.
HOOD, Judge.
This suit originated as a separation suit instituted by Mrs. Ella Bourque Leger (now Mrs. Ella Bourque Edwards) against David Leger. It later was converted into an action for divorce, and judgment was rendered by the trial court on May 13, 1974, decreeing a divorce between the parties and awarding custody of their two minor children to defendant, David Leger. Thereafter, pursuant to appropriate pleadings filed by Mrs. Leger and after a hearing, judgment was rendered by the trial court on March 17, 1975, transferring the custody of the children to their mother. Defendant Leger has appealed from the last mentioned judgment.
The present suit was consolidated for trial and appeal with another suit instituted by David Leger against Mrs. Ella Bourque Leger, in which the plaintiff sought to obtain a divorce from the defendant. The judgments rendered by the trial court in that case are identical to those which were *785 rendered in the instant suit. David Leger has appealed from the judgment rendered in that companion case on March 17, 1975, which awards custody of the children to Mrs. Leger. We are deciding both of these cases on this date. See Leger v. Bourque, La.App., 322 So.2d 789.
Although plaintiff in the instant suit has remarried and is now the wife of Herman R. Edwards, she nevertheless is sometimes referred to herein as Mrs. Leger.
The sole issue presented is whether the trial court erred in changing the custody of the minor children from the father to the mother.
Mr. and Mrs. Leger were married in 1969. Two children were born of that union, one of whom is a boy, now about five years of age, and the other a girl, now about four years old. The parties separated on February 8, 1972, and a few days thereafter Mrs. Leger instituted this suit against her husband seeking a separation from bed and board, custody of the children and support. An interlocutory judgment was rendered on February 25, 1972, awarding the temporary custody of the two children to Mrs. Leger, and condemning Mr. Leger to pay support for her and for the children. Shortly after that judgment was rendered, Mrs. Leger voluntarily placed the children in the custody of Mr. Leger because she was ill and she felt that she could not properly care for them at that time. An entry on the minutes of the trial court shows that on March 10, 1972, the parties stipulated that the custody of the two children would be granted to Mr. Leger, with reasonable visitation rights to the mother, and that the previous award of alimony and child support would be reduced.
A few months later, upon application of Mrs. Leger, a rule was issued directing defendant to show cause why the custody should not be transferred to her. After a hearing, judgment was rendered by the trial court on November 9, 1972, decreeing that Mr. Leger should retain custody of the children, but increasing the amount of alimony or support which he should pay to his wife.
Plaintiff obtained the issuance of another rule in December, 1972, directing defendant to show cause why custody of the children should not be transferred to Mrs. Leger. A hearing was held, and judgment was rendered by the trial court on February 16, 1973, again decreeing that the father was to retain custody, but ordering an increase in child support which previously had been decreed by the court.
The present suit was converted into a suit for divorce early in 1974, and it was consolidated for trial with the above mentioned companion suit. Following a trial on the merits of these companion cases, judgment was rendered in each suit on May 13, 1974, granting a divorce in favor of defendant, David Leger, on the grounds that the parties had lived separate and apart for more than two years, and awarding custody of the children to him.
On October 16, 1974, Mrs. Leger obtained the issuance of another rule seeking to have the children placed in her custody. After trial of that rule, judgment was rendered by the trial court on March 20, 1975, awarding the custody of both children to the mother, Mrs. Ella Bourque Leger, granting specific visiting rights to the father, and condemning Mr. Leger to pay a specified amount per month as child support. It is from that judgment that the appeal which is before us now was taken.
The principal argument made in behalf of Mr. Leger on this appeal is that the trial court erred in failing to apply the old "double burden of proof" rule, a harsh, mechanical jurisprudential rule which developed as the result of some language used in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955). See King v. King, 245 So.2d 560 (La.App. 3 Cir. 1971); Siggio v. Siggio, 217 So.2d 673 (La.App. 3 Cir. 1969); Cenac v. Power, 211 So.2d 408 (La.App. 1 Cir. 1968); Overstreet v. Overstreet, *786 244 So.2d 313 (La.App. 4 Cir. 1971), and Emery v. Emery, 223 So.2d 680 (La.App. 4 Cir. 1969).
Our Supreme Court, however, in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), discarded the so called "double burden of proof" rule, and instead the court set out clear and understandable guidelines which are to be followed in determining to whom custody of children should be awarded, whether the case involves the initial awarding of custody or the transfer of custody from one person to another.
As stated in Fulco the following legal principles are applicable in determining the award of custody of children: (1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children; (2) generally, it is in the best interest of the children that their custody be awarded to the mother; (3) when the trial court has made a considered decree of permanent custody, the party seeking to change that custody bears a heavy burden of proving that the best interest and welfare of the children will be served by making that change, even though it involves removing them from the environment to which they are accustomed; and (4) on appellate review, the determination made by the trial judge in a child custody matter is entitled to great weight, and his decision as to custody will not be disturbed in the absence of a clear showing of abuse of the great discretion which is vested in him. See Nethken v. Nethken, 307 So.2d 563 (La. 1975); Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972); DeCelle v. DeCelle, 313 So.2d 634 (La.App. 2 Cir. 1975); Southern v. Southern, 308 So.2d 424 (La.App. 3 Cir. 1975); Hilliard v. Richard, 291 So.2d 875 (La. App. 3 Cir. 1974); LeBlanc v. LeBlanc, 293 So.2d 883 (La.App. 1 Cir. 1974); Gulino v. Gulino, 303 So.2d 299 (La.App. 1 Cir. 1974). See also, Nugent v. Nugent 232 So.2d 521 (La.App. 3 Cir. 1970).
In Estes v. Estes, supra, the trial court granted a change of custody from the father to the mother, and the court of appeal reversed. The Supreme Court reversed the court of appeal and reinstated the judgment of the trial court, affirming the change in the previous award of custody. In so doing, the Supreme Court said:
"It is true that stability in environment is an important value, so that a party seeking to change a considered determination of the permanent custody of children bears a heavy burden to justify such change as being in their best interest.. . .
"There is no showing that, because of this temporary custody, the children's ultimate best welfare is not being served by returning them to their mother's care in accord with the initial custody determination and in accord with their justified expectations. . . .
"Further, an appellate court must give great weight to the trial court's considered determination of custody. If the trial court decides which parent should best have custody for the children's sake after it has applied correct principles of law, a reviewing court should disturb such custody determination only where there is a clear abuse of the trial court's discretion in the matter, even though reasonable minds might differ as to the children's best interest under the variant circumstances suggested by a particular record. . . ."
In Hilliard v. Richard, supra, we affirmed a change of custody from the father to the mother, after the mother had remarried and established a new home, although we found that "There is no question that the father was providing good care of the children." In that case, we said:
"Considering the circumstances as a whole in the light of the principles quoted above from the Estes case, we are unable to say that the district judge abused his discretion. He saw and heard these witnesses, particularly the mother and *787 her new husband, Mr. Wedgeworth, and concluded the best interests of the children will ultimately be served by returning them to the mother at this time. It is a question on which reasonable minds could differ, but we conclude it is not an abuse of discretion."
We have examined the facts in the instant suit with the above legal principles in mind.
Mrs. Leger married Herman R. Edwards on October 5, 1974. Prior to that time she was unable to care for her children properly. It was necessary for her to obtain employment after she separated from her husband, and her work made it impossible for her to remain at home with the children. She had no home of her own and was not financially able to obtain one. If she had been awarded the custody it would have been necessary for her to live with them in the home of her parents, Mr. and Mrs. John R. Bourque. Although her parents were willing for plaintiff and the children to move in with them, the record shows that Mr. and Mrs. Bourque have eleven children of their own, eight of whom are young and live with them. If plaintiff and her children would have moved in, it would have increased the number of occupants in the home to thirteen. The house in which plaintiff's parents live is very old, consisting of six rooms and one bath. Mr. Bourque earns about $214.00 every two weeks. He has no other income and his wife and at least eight of his children are totally dependent upon him for support. Plaintiff would not have been able to assist in caring for any of the children since her work would have required her to be away from home every day. We agree with the trial court that under those circumstances plaintiff was unable to properly care for her children prior to her remarriage.
There has been a decided change in plaintiff's circumstances and her ability to care for her children since October 5, 1974. At the time of the hearing which was held on January 31, 1975, she and her husband were living in an apartment in Westwego, Louisiana. The apartment has two bedrooms, a built-in kitchen, a living room, dining room and bath, and a playground is located in the middle of the apartment complex. Some children live in other apartments in that complex. Mr. Edwards works regularly as an operator for Pioneer Fishing and Rental Tools, and his income is adequate to support plaintiff and her two children. He has a 14-year old child by a former marriage who also lives in their apartment. Mrs. Leger is not employed now, and she and her husband do not anticipate that she will have to go back to work. She will be able to be with her children at all times.
Although the children have been well cared for by defendant, the conditions under which they have lived while in his custody have not been ideal.
Immediately after Mr. Leger obtained custody of the children in March 1972, following his separation from his wife, he arranged for his mother to care for them. His mother found that she was unable to do so, however, and so four days later he arranged for the children to be cared for in the home of Mr. and Mrs. Louis Doucet, who live about six miles from defendant's home. Mr. and Mrs. Doucet cared for the children for more than two years, until October 16, 1974, when Leger removed them from the Doucet home and placed them under the care of Mr. and Mrs. James Lee Barron. Mr. Barron is Leger's nephew, and he and his wife and their two children live about six miles from defendant's home. The two children whose custody is at issue here were being cared for by Mr. and Mrs. Barron at the time the last custody rule was tried on January 31, 1975.
While the children were living with Mr. and Mrs. Doucet, defendant Leger visited with them almost every afternoon after work, and he took them to his home on some weekends, when the children were not visiting with their mother. On many of those weekends Leger took only his son to his *788 home, leaving his daughter with Mrs. Doucet. Occasionally, however, when defendant's mother was able to spend the weekend in Leger's home, he would also bring his daughter to that home for that weekend.
A dispute arose between Leger and Mr. and Mrs. Doucet in October, 1974, and it was because of that disagreement that Leger removed the children from the Doucet home. The dispute was serious enough that the Doucets engaged an attorney and are threatening to sue Leger, and some animosity apparently has developed between the parties. Mrs. Doucet testified that one of the causes for the disagreement was the displeasure expressed by Leger because Mrs. Doucet had allowed plaintiff to visit with the children in the Doucet home at times other than those specified by the court order.
Since October 16, 1974, both of the children have remained under the care of Mr. and Mrs. Barron during the day. Leger picks them up every afternoon during working days and takes them to his home where the children spend the night. The next morning he feeds and dresses the children and, while en route to his place of employment, he returns them to the home of Mr. and Mrs. Barron. Occasionally when Leger gets in from work too late the children spend the night with the Barrons. Defendant Leger lives with his brother, near Opelousas. There is no woman in that home, and we have some concern as to whether Leger and his brother are able to provide adequately for the needs of these small children every night and on weekends. We also question whether the best interests of the children are being served by continuing to have them reside with foster parents or baby sitters during work days and to reside with their father and uncle during nights and weekends.
The trial judge obviously has felt from the beginning that the best interest and welfare of the children would be served by placing them in the custody of the mother, although he determined that she was unable to care for them until her remarriage on October 5, 1974. We note, for instance, that following the hearing held on September 8, 1972, the trial judge said:
"I find that it would not be in the best interest of the children for custody to be given to the wife at this time. There has been some testimony by her that she suffered from a nervous condition and was only recently discharged by the doctor, as the court understands it. The law grants a preemptory right to the wife to her children, and the court looks forward to delivering the children to her. . . . This is not to say that in the near future that the court will not grant the wife custody of the children, because the court looks forward to doing that, but I think we have to have a little more time, more visitation on the part of the wife, a reacquaintance with her children and a rejoining of their interests.. . .
". . . The court's plan is to get the mother and the children to know one another a little better again so that she can show them her interest, and the court will, at a later time, transfer custody to her, but at this time, does not believe it should transfer custody to the wife." (Emphasis added).
After the hearing held on February 2, 1973, the trial judge stated in his reasons for awarding temporary custody to the father that:
". . . Under the evidence and considering the prior testimony which I heard in this case, I don't feel that at this time is exactly the right time to change custody. I am going to modify it however . . . ."
In the judgment rendered following that hearing the court greatly increased the time during which the mother could visit with her children and the times when she could have the children for overnight visits.
*789 At the conclusion of the trial of the case on its merits on February 21, 1974, the trial judge continued custody of the children in the father, but he observed that:
". . . The Court is going to continue the custody of the children as they are except that during the summer the wife will be given longer visitation privileges beginning one week after the Head Start Program finishes . . . The Court still looks forward to returning the children to the custody of the mother, but anytime I have some suspect things, particularly of a mother who may be having somebody in her trailer with her children there I am just not going to do it." (Emphasis added).
No reasons were assigned by the trial court for rendering the judgment from which the present appeal has been taken. It is apparent, however, that he determined that it was now in the best interest and welfare of the children that they be returned to the custody of the mother.
After considering all of the evidence in the instant suit, we conclude, as did the trial judge, that the best interest and welfare of the Leger children would be served by transferring them to the custody of their mother, Mrs. Leger. We make that decision after considering all of the legal principles set out in Fulco and Estes, supra, including the rule that a heavy burden rests on the party seeking a change of custody to show that it is for the best interest of the children that they be removed from the environment to which they are accustomed. Since we have determined that it is for the best interest and welfare of the children that their custody be transferred from the father to the mother, it necessarily follows that it would be detrimental or deleterious to their welfare to refuse to grant such a transfer of custody.
Our conclusion is that there was no abuse of discretion on the part of the trial judge, and that the judgment appealed from thus should be affirmed.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.