311 So.2d 290 (1975)
Norma Louise Sherman LAGRONE, Plaintiff-Appellant,
v.
Marlon Venson LAGRONE, Defendant-Appellee.
No. 12575.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1975.
Rehearing Denied May 1, 1975.
Writ Refused June 20, 1975.
Donald R. Miller, Shreveport, for plaintiff-appellant.
*291 Love, Rigby, Dehan & Love by Kenneth Rigby, Shreveport, for defendant-appellee.
Before AYRES, HALL and DENNIS, JJ.
En Banc. Rehearing Denied May 1, 1975.
DENNIS, Judge.
This is a child custody proceeding in which a father seeks to modify an initial decree granting permanent custody to the mother.
Three children were born of the marriage of Mr. and Mrs. Lagrone. On May 21, 1974 Mr. Lagrone obtained a divorce on the grounds of adultery. By agreement of the parties the court granted Mrs. Lagrone custody of the three children, a girl, Barbara, 17; a girl, Robin, 12; and a son, Rocky, now 12 years old. Mr. Lagrone was ordered to pay $125 per month per child, child support.
Mr. Lagrone brought this suit for a change of custody as to Rocky on August 22, 1974. After a hearing, the trial judge, assigning oral reasons, rendered judgment awarding custody to the father and terminating the child support of $125 per month for Rocky. Mrs. Lagrone appealed.
After her divorce Mrs. Lagrone had great difficulty in performing the arduous tasks of adjusting to a reduced standard of living, maintaining full time employment as a secretary, and providing parental guidance for her three children. She admitted that for sometime prior to the trial she had not "had the heart" to cook the children their evening meal. Instead, she frequently came home from work and lay down. On these occasions she sent the children to a quick order hamburger place for supper. The manager of the establishment estimated the Lagrone children ate supper there on the average of 3 to 4 times per week, and sometimes as much as 5 times per week. Mrs. Lagrone's explanation for this was that she was "just all washed out . . . for awhile." According to Mr. Lagrone, Rocky complained that his mother frequently went out at night and did not return until early morning hours. This hearsay statement was not substantiated by other evidence, and was denied by Mrs. Lagrone.
Nevertheless, it is clear that Mrs. Lagrone had difficulty in administering discipline to her son. He made poor grades during the 1973-74 school year, and a counsellor advised his father that he should repeat the sixth grade. Part of his problem in school was due to Mrs. Lagrone's inability to make him do his homework. Rocky also had shot out a window and had either cut or forcibly removed a screen on separate occasions at his mother's house.
On July 29, 1974 Rocky ran away from his mother's apartment and came to live with his father. Before this, when his son visited him, Mr. Lagrone testified, he was a "smart alec" and didn't respect other people or their property. He attributed this to the fact that Rocky had not had a spanking in two years and had been allowed to do as he pleased. One of Mr. Lagrone's neighbors testified that on these visits Rocky's attitude and actions were bad and that he would not obey or listen to adults who sought to correct him.
Since he has lived with his father, Rocky's attitude and school work have improved dramatically. At the beginning of the school year in 1974 he again scored failing grades, although his father had placed him in a different school and made him repeat the 6th grade. However, by the date of the trial on October 14, 1974, his grades had steadily improved to the point that he was receiving A's and B's. One of his teachers, in a written statement filed into evidence, stated that he had made vast improvement both academically and socially. The manager of the apartment where Mr. Lagrone resides testified that Rocky is now more polite and gets along with the other children much better.
*292 Mr. Lagrone confirmed that Rocky is happier and better behaved. He testified that he provides stricter discipline for the boy by checking his homework every night and making him redo it on occasion. He thinks that Rocky appreciates living in a home where he is disciplined and more attention is given him. Mr. Lagrone has remarried and lives with his wife and her two daughters by a previous marriage. His present wife is a full-time homemaker and Rocky has had no trouble in fitting into the family.
The record is convincing that Rocky and Mr. Lagrone have always had a close relationship. Mr. Lagrone annually has observed almost all of Rocky's football games and daily practice sessions. They have hunted, fished, and built duck blinds and deer stands together. During one period of about a year when Mrs. Lagrone and the children lived in Jacksonville, Texas, Mr. Lagrone faithfully drove 240 miles almost every other weekend to visit his children. All of the witnesses, including Mrs. Lagrone, gave testimony to the genuine bond of affection between Rocky and his father.
After hearing the evidence and conducting a conference with Rocky, in chambers and out of the presence of the parties and their counsel, pursuant to their agreement, the trial judge in his oral reasons for judgment stated:
"* * * [a]fter visiting with Rocky, he confirmed what I suspected from the testimony . . . that he is actually getting something that maybe he needed more than anything else, and that was some real attention in the form of discipline.. . . He had the impression and the very strong impression prior to leaving and going with his father that he could just get away with just about anything he wanted to and there would be no consequences. . . . I truly believe this: Based on what I have heard, that the boy was headed for some real problems had he not gone to his father when he did. . . ."
Mrs. Lagrone contends, however, that the father's evidence was not sufficient and, under the "maternal preference" rule or presumption and the "double burden" rule, that the trial court should have rejected his demands for a change in custody.
The maternal preference concept has been stated and restated by our courts in numerous opinions. E.g., see Nethkin v. Nethkin, 307 So.2d 563 (La.Sup.Ct.1975); See Comment, The Father's Right to Child Custody In Interparental Disputes, 49 Tul.L.Rev. 189 (1974); Comment, Child Custody: Preference To The Mother, 34 La.L.Rev. 881 (1974). After reviewing many of the authorities discussing the maternal preference rule in Welch v. Welch, 307 So.2d 737 (La.App., 2d Cir. 1975) we recently concluded:
"However, in actual operation, the maternal preference rule, instead of providing a complete guide for a decision of the custody issue, appears only to establish a presumption that the interest of a child will be better served by placing him in custody of the mother. Furthermore, the presumption appears to be a rebuttable one which must yield to convincing evidence that the greater advantage of the child will be served by entrusting his care to the father." Id. at 739.
The double burden rule requires that the party seeking to change a decree resulting from a considered adjudication of permanent custody must prove that the conditions under which the child is living are detrimental to his interests and further that the applicant can and will provide a good home and a better environment if given custody. Nethkin v. Nethkin, supra; Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955).
*293 We are also required to give heed to the rule that the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Nethkin v. Nethkin, supra and Fulco v. Fulco, supra.
When we apply these principles which govern custody proceedings and the review thereof, we are unable to hold that the trial judge abused his discretion in changing the custody of Rocky from his mother to his father. The record fully supports with convincing evidence his determination that the continuation of Rocky in the custody of his mother would be so deleterious to him as to require his removal. This was due mainly to Mrs. Lagrone's inability to discipline her son, and not because of immoral influence or mistreatment. The evidence also supports the trial judge's findings that Mr. Lagrone can provide a better environment and that the child's interest will be better served by awarding custody to the father.
The judgment of the district court is affirmed at the cost of the appellant.
Affirmed.