348 So.2d 1315 (1977)
Harry M. BUSHNELL
v.
Linda Cheek BUSHNELL.
No. 6081.
Court of Appeal of Louisiana, Third Circuit.
August 9, 1977.
Walter M. Hunter, Jr., Alexandria, for defendant-appellant.
Gravel, Roy & Burnes, by Dan E. Melichar, Alexandria, for plaintiff-appellant.
Antoon & Dalrymple, by Joseph T. Dalrymple, Alexandria, for plaintiff-defendant-in reconvention-appellant.
Holt, Wagner & Lee, by Richard E. Lee, Pineville, for plaintiff-appellee.
Before HOOD, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
The trial court removed Allison Nikole "Niki" Bushnell, age two-and-a-half, from the custody of her father, Harry M. Bushnell, and returned the child to her mother, Linda Cheek Bushnell, now Mrs. Leo Noland, in a rule proceeding. Because the father had been awarded Niki's custody at the prior divorce hearing and because the trial judge found no deleterious circumstances in her custodial situation with him, Harry Bushnell has appealed.
The chronology of events relative to the marriage and the child are as follows:
*1316
February 12, 1972: Harry and Linda married.
March 20, 1974: Niki born.
February 6, 1975: Parents separated (Niki was
 about 11 months old).
April 8, 1975: Custody, alimony and child
 support granted Linda.
June 11, 1975: Harry granted legal separation
 on abandonment; Linda
 given custody.
September 2, 1976: Linda petitioned for divorce;
 Harry reconvened asking
 custody; accused Linda of
 adultery with one Noland.
November 2, 1976: Judgment granting Linda
 divorce, but changing custody
 to Harry.
November 5, 1976: Linda married Leo Noland.
December 13, 1976: Rule filed by Linda for
 return of Niki's custody.
January 17, 1977: Judgment returning permanent
 custody to Linda.
The reasons for judgment assigned by the trial court in returning custody to the mother by the judgment of January 17, 1977, establish the posture of the case on appeal. In part, the trial court said:
"Considering the above testimony the Court finds that the mother has married Mr. Noland and lived a decent and moral life since this marriage. She is willing and able to provide Niki with a good home. The testimony fails to establish that Niki is suffering from any of the emotional problems urged by the mother and denied by the father. The Court further finds that the home provided by Mr. Bushnell is in no way deleterious." (TR.50)
* * * * * *
"Perhaps it is better to consider the underlying reasons for all of these principles as guide posts in determining what should be the prevailing consideration, the best interest of the child. This Court intends to take that approach. This Court will apply the reasoning behind these principles to the above facts including the age and sex of the child, the period of care by the mother before the custody change, the conduct of the mother requiring the change, the subsequent rehabilitation of the mother, the trauma to a child of this age when separated from its mother, the period of time the child was with the father, the good home provided by the father and the undesirable effect of removing the child from the home to which she may have now become accustomed, in order to determine the prevailing issuethe welfare of the child. In so doing the Court [is] unable to find that there is sufficient evidence to overcome the presumption in favor of the mother. Stated another way, under these facts, this child should still have a psychological reliance on her mother which is stronger than her reliance on any other person. It follows that it is in her best interest to be with her mother." (TR.51-52)
On appeal, counsel for Harry Bushnell urges strenuously that, since the trial court found no deleterious conditions in Niki's custody with Harry and relied entirely on the presumption of the mother's paramount right to custody, the judgment changing custody is erroneous as a matter of law.
After reviewing the record, we find that these arguments are persuasive but not conclusive.
The paramount issue in this case, the trial court correctly held, is the welfare of the child.
Appellant couches his argument that the trial court erred principally on the old "double burden" rule established in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955) which was to the effect that a person seeking change of custody must prove that (1) the circumstances under which the child is living are deleterious to its welfare and (2) the applicant for a change in custody can provide a better environment. Under this rigid and inflexible approach to custody matters, a person seeking change of custody had no hope unless it could be first established that there were bad circumstances in the child's custodial situation. In our view, the double burden rule has been abandoned in favor of the approach that the courts must seek, above all else, the welfare of the child. Compare Bourque v. Leger, 322 So.2d 784 (La.App. 3 Cir. 1975). See also *1317 Hilliard v. Richard, 291 So.2d 875 (La.App. 3 Cir. 1974) and Cramer v. Mowery, 346 So.2d 331 (La.App. 4 Cir. 1977).
In the case of Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) the Supreme Court laid out four legal principles to be considered in appellate review of custody cases which may be summarized as follows:
(1) The paramount consideration is the welfare of the child.
(2) Generally, the welfare of the child is served by granting custody to the mother, especially a child of tender years.
(3) When the trial court has made a considered decree of permanent custody in light of principles one and two the party seeking to change the custody bears a heavy burden.
(4) On appeal, the trial judge's decision in custody matters is entitled to great weight.
In reviewing the trial court's decision to return the custody of Niki to her mother, as measured by the four Fulco principles, we make the following observations:
Principle 1Welfare of the Child
The trial court stated that its primary concern was the welfare of the child and it is very difficult to argue successfully against the idea that a 2½ year old female child, who has been in the custody of her mother all her life except for two months and fifteen days, should be with her mother. In the present case, expert testimony to this effect was given by Dr. Ronald Pryer, chief psychologist at Central Louisiana State Hospital, who had not examined or tested Niki, but gave testimony based upon hypothetical questions.
Principle 2Mother's Presumption
The present case fits precisely; a child of tender years should be placed with the mother.
Principle 3Considered Decree
As noted above, we do not believe the so-called "double burden" still prevails in Louisiana as a rigid and inflexible rule. In the present case, the trial court apparently concluded (and if he did not do so, the record establishes) that the mother met the burden of proving that the child should not be left with the father. How "heavy" a burden the applicant for a change in custody must carry will vary from case to case. We do not hold that a child's custodial circumstances and the length of time in a home are totally irrelevant. Obviously, a court would be reluctant to change the custody of a happy child who has been in one parent's home for three or four years. But returning a child to her mother after only a brief time with the father does not require the showing of deleterious circumstances other than that of being deprived of the mother's care and companionship which she had known most of her life.
It is true that the trial court here did not find anything deleterious in the environment furnished the child by her father. The principles of Fulco are not prescribed as absolute and this rule, in our opinion, must bow to the first and second principles in this particular case.
Principle 4Discretion of the Trial Court
This court on review of custody cases gives great weight to the conclusions of the trial judge. The trial court did not err in the instant case.
Thus, the return of Niki to the custody of her mother meets three of the principles established by Fulco. The third principle, involving the heavy burden, must bow to the others. In matters so difficult of determination as child custody, rigid and inflexible rules can serve only to defeat the ends of justice and do not serve the welfare of children.
The judgment of the trial court is affirmed for the reasons stated.
Costs are taxed against appellant.
AFFIRMED.
DOMENGEAUX, Judge, dissenting.
This appeal arose from a rule to show cause why custody of two and one-half year *1318 old Niki Bushnell should not be returned to her mother, Linda Cheek Bushnell. The custody previously had been permanently awarded to the father, Harry M. Bushnell, in connection with the divorce awarded to the mother on the basis of living separate and apart for one year and sixty days from the time of legal separation. The trial judge made the change of custody to the mother after a two day trial on the rule. I would reverse that decision and order that custody be returned to the father.

FACTS
Harry and Linda Bushnell were married on February 12, 1972, in Rapides Parish. On March 20, 1974, Allison Nikole (Niki) Bushnell was born. Harry Bushnell filed suit for a legal separation on the grounds of abandonment on February 20, 1975, and was awarded the separation. He agreed to the award of custody of Niki to the mother.
After a year and sixty days from the judgment of separation Linda Bushnell filed suit for divorce. She was awarded the divorce, but on a rule to show cause why custody should not be granted to him, Harry Bushnell was awarded permanent custody of the child. Although the rule was uncontested by the mother, the father presented evidence that his former wife had been living with a man for some four months in the presence of the child without the benefit of marriage. He argued that this immoral conduct was severely detrimental to the child's well-being. The mother subsequently married her lover, and brought this rule some three months after the judgment of divorce was rendered. The father too has remarried.
At trial the mother urged that her child had been emotionally damaged by their separation. Doctor Pryer, a psychologist who, as the majority has pointed out, did not examine or test the child, said that in general it is in the best interest of a child to be with its mother.
The majority quoted the trial judge in part, but I find it helpful to set out a more complete quotation of his reasons:
"Considering the above testimony the Court finds that the mother has married Mr. Noland and lived a decent and moral life since this marriage. She is willing and able to provide Niki with a good home. The testimony fails to establish that Niki is suffering from any of the emotional problems urged by the mother and denied by the father. The Court further finds that the home provided by Mr. Bushnell is in no way deleterious. . . .. . . However, Dr. Pryer testified that the mere separation of child from a mother can be harmful. This is recognized in the second principle set forth in Fulco[1] which establishes the rule that it is generally in the best interest of the child to grant custody to the mother, especially where they are of tender age. This general rule has often been referred to as a presumption which exists in the favor of the mother. If the mother is to prevail here she must do so solely on a basis of this general rule or presumption. However, this rule is based upon sound reasons as is explained by Dr. Pryer.
Considering the above findings, what disposition does the law require? The uncertainties raised by apparently conflicting holdings in the appellate decisions will not be discussed herein. The learned counsel for the parties involved in these proceedings will surely discuss these problems in their appellate briefs in the event of appeal as thoroughly as they argued them to this Court. Many questions can be asked. Is there now a `double burden' placed upon a person who seeks to change a `considered' custody award? Must there be a showing that custody is `deleterious' before it can be changed? What is the `heavy burden' referred to in Fulco? Is the general rule or presumption that the child is better off with the mother sufficient to satisfy both sides of the `double burden' or the `heavy burden'? . . . Perhaps it is better to consider the underlying reasons for all of these principles as guide posts in determining *1319 what should be the prevailing consideration, the best interest of the child. This Court intends to take that approach. This Court will apply the reasoning behind these principles to the above facts including the age and sex of the child, the period of care by the mother before the custody change, the conduct of the mother requiring the change, the subsequent rehabilitation of the mother, the trauma to a child of this age when separated from its mother, the period of time the child was with the father, the good home provided by the father and the undesirable effect of removing the child from the home to which she may have now become accustomed, in order to determine the prevailing issuethe welfare of the child. In so doing the Court is unable to find that there is sufficient evidence to overcome the presumption in favor of the mother. Stated another way, under these facts, this child should still have a psychological reliance on her mother which is stronger than her reliance on any other person. It follows that it is in her best interest to be with her mother.
Lastly, it must be stated that this decision is based upon what this Court feels is shown or presumed to be in the best interest of the child. If significant weight should have been given to the prior custody award to the father, he may have prevailed. . . ." [My emphasis].
In the case of Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955), our Supreme Court held that:
". . . it is incumbent upon the party requesting the modification to prove that the conditions under which the children are living are detrimental to their interests and further that the applicant can and will provide a good home and better environment if given their custody."
This has become well known as the "double-burden" rule in change of custody cases.
The Supreme Court later expounded upon the rules applicable in custody cases in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), Justice Tate as the organ of the court set out four general propositions:
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.
(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1,102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App.1962) (citing numerous decisions of this court to such effect).
(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); Nugent v. Nugent, 232 So.2d 521 (La.App. 1970) (citing numerous court of appeal decisions to such effect).
(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of *1320 the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952)."[2]
It should be noted at the outset that Fulco proposition number 3 deals exclusively with change of custody cases, and cites Decker v. Landry, supra, with approval.
The Third Circuit Court of Appeal had an opportunity to apply the principles of Fulco in the case of Hilliard v. Richard, 291 So.2d 875 (La.App. 3rd Cir. 1974). In that case the father had been granted "temporary" custody of the children after the divorce. Upon a rule to show cause the mother was awarded permanent custody. The Court of Appeal affirmed with this comment:
"It is true the mother has failed to show that a continuation of custody in the father will be deleterious. But our understanding of Estes is that all four of the quoted principles need not be followed inflexibly in every case. The trial judge has the discretion to use these four principles as general guidelines."
This court again applied Fulco principles in Bourque v. Leger, 322 So.2d 784, 786 (La.App. 3rd Cir. 1975). The court made this comment in affirming the change of custody from father to mother.
"The principal argument made in behalf of Mr. Leger on this appeal is that the trial court erred in failing to apply the old `double burden of proof rule, a harsh, mechanical jurisprudential rule which developed as the result of some language used in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955). See King v. King, 245 So.2d 560 (La.App. 3rd Cir. 1971); Siggio v. Siggio, 217 So.2d 673 (La.App. 3rd Cir. 1969); Cenac v. Power, 211 So.2d 408 (La.App. 1st Cir. 1968); Overstreet v. Overstreet, 244 So.2d 313 (La.App. 4th Cir. 1971), and Emery v. Emery, 223 So.2d 680 (La.App. 4th Cir. 1969).
Our Supreme Court, however, in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), discarded the so called `double burden of proof rule, and instead the court set out clear and understandable guidelines which are to be followed in determining to whom custody of children should be awarded, whether the case involves the initial awarding of custody or the transfer of custody from one person to another."
The Supreme Court refused writs on the case. See also Southern v. Southern, 308 So.2d 424 (La.App. 3rd Cir. 1975).[3]
The First Circuit Court of Appeal has made frequent reference to the Decker double burden rule since Fulco was decided, and has done so with approval.[4] See Poole v. Poole, 270 So.2d 215 (La.App. 1st Cir. 1972), 273 So.2d 295, writs refused March 1, 1973; Gulino v. Gulino, 303 So.2d 299 (La. App. 1st. Cir. 1974); Jordan v. Jordan, 294 So.2d 261 (La.App. 1st Cir. 1974), 296 So.2d 835, writ refused July 1, 1974; Finn v. Finn, 335 So.2d 523 (La.App. 1st Cir. 1976); Brummett v. Hudson, 338 So.2d 124 (La. App. 1st Cir. 1976); Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976); Lemons *1321 v. Lemons, 325 So.2d 734 (La.App. 1st Cir. 1976); and Partin v. Partin, 339 So.2d 450 (La.App. 1st Cir. 1976).
Likewise, the Second Circuit Court of Appeal continues to recognize the double-burden rule. Lagrone v. Lagrone, 311 So.2d 290 (La.App. 2nd Cir. 1975), 313 So.2d 839, writ refused June 20, 1975. DeCelle v. DeCelle, 313 So.2d 634 (La.App. 2nd Cir. 1975).
Most recently in Monsour v. Monsour, 339 So.2d 488 (La.App. 2nd Cir. 1976), the Second Circuit addressed the issue of a change in custody. The trial judge had refused a change in custody from mother to father. The Court of Appeal reversed, finding the conduct of the mother (who lived with her paramour) detrimental to the child, and that the father could provide the child with a lovely home. Although the court did not cite Decker or Fulco, we feel its holding was an application of the "double-burden rule" or "heavy burden rule", whatever be the name.
The Supreme Court granted writs in Monsour and reinstated the trial court's decision, Monsour v. Monsour, (Supreme Court # 59,100, Handed Down June 20, 1977), 347 So.2d 203 (La.1977). It cited Fulco and particularly the heavy burden rule, but did not further clarify that proposition. The primary concern of the Court was that the reform of the mother by her marriage to the paramour indicated the environment she could provide for her son was not so deleterious as to justify a change in custody.
That case is clearly distinguishable from the instant case, because here the mother did not have the initial award of custody as did the mother in Monsour. Here the mother is seeking the change of custody and is carrying the heavy burden of proof, not the father, as was the case in Monsour. Also, although the fact situations of Monsour and our case are similar, the mother in Monsour relentlessly strove to maintain the control and custody of her son. Here, for whatever reason, the mother relinquished control over her daughter without even making an appearance or contesting the rule at all. I feel this indicates that the mother cared less for her child than for her own free lifestyle.
As can be seen by the trial judge's reasons in the instant case, confusion reigns in regard to the burden of proof in change of custody cases. This confusion has existed for quite some time among both lawyers and judges. I submit that Fulco did not overrule the Decker rule, and that this court has erred in saying that it did.
The third proposition in Fulco, as above noted, cited Decker with approval. However, the rule in Fulco does not exactly restate the Decker rule. Instead it imposed upon the party seeking a change in custody a "heavy burden" of proof. The Monsour case, the most recent pronouncement on the subject, fails to clarify that burden, which is a pressing need of our courts. That clarification can only issue from our Supreme Court and I urge the court to clear up the confusion now in existence.
I feel that the burden imposed by Decker is not without purpose or logic. Not only is the party seeking change required to prove the child is in an environment detrimental to him, the party must also prove the environment he can provide is better. This effectively prevents children from being bounced back and forth from parent to parent, like so many tennis balls, when the parents are equally equipped to care for the children.
This is not to ignore the maternal preference rule (proposition two of Fulco). That also is a well founded principle. But the maternal preference rule is not the primary consideration when a considered decree of custody has already been made. If that rule is to be equally balanced with the double burden rule, then proposition three of Fulco is meaningless. I submit that propositions one and two of Fulco are meant to be applied in initial custody suits, and proposition three applies in change of custody suits, exclusively. In Decker, the Supreme Court stated: ". . . it is well to point out that the many cases cited by counsel for appellant in support of the contention that the *1322 mother is to be preferred in contests involving the custody of children have no application to the situation presented in the matter at hand. This is not a case wherein the parents of the children are initially contesting the right of one over the other to custody. Here, permanent custody has already been awarded to the father by the judgment of separation conformably with the provisions of Article 157 of the Civil Code . . ."
The instant case provides a good explanation for the above logic. The father requested custody by rule, and at the hearing evidence was presented to prove the mother's adultery. The mother, who was served, did not even attend to contest the change of custody rule. It is understandable that the judge initially awarded custody to the father, when the mother, who could have taken great advantage of the maternal preference rule, did not even make an appearance.
This decision was a considered decree. I might note at this point that this was the first considered decree of custody. Although the mother had been awarded custody after the separation, it was an uncontested temporary award made as a matter of course. This was not a considered decree. The mother had not yet become involved in extra-marital activities. Under such conditions, the award of temporary custody to the mother is not usually challenged by the father.
When the circumstances changed and the mother began living with her lover, her husband understandably became alarmed for his daughter's welfare. The trial judge awarded custody to the father only after sufficient evidence was presented to show the mother's indiscreet living arrangements and its potential effect on the child. Then, when the mother requested custody, the heavy burden came into play. She should not have been allowed to use the maternal preference rule advantage that she carelessly rejected in the initial award.
In spite of the heavy burden which is incumbent upon the party seeking change to carry, the trial judge placed the burden of proof on the father, who was in custody of the child already! If all three of the Fulco propositions were to be used as only flexible guidelines in all cases, as the majority suggests, then an endless stream of custody challenges between parents would be the result.
The majority also claims that the heavy burden must necessarily vary from case to case. In reality, this means that no burden exists at all, and propositions one and two of Fulco control the decision exclusively.
This case is a perfect example. The trial judge found that not only was the father's home not deleterious to the child, it was a very good home. No proof was offered that the mother could provide a better home. The trial judge's award to the mother under these circumstances amounts to finding that she bears no burden of proof at all in connection with the requirement of proposition three of Fulco.
If the double-burden or heavy burden rule is to have any efficacy, the mother should at least have proved that the father was not providing well for his child.
Therefore, I would feel impelled to follow the double-burden or heavy burden rule as set forth in Decker v. Landry and as explained further in Fulco v. Fulco, and Estes v. Estes. It is not my purpose to quibble over semantics, but to follow the established principles as set out by our Supreme Court. While I hold no great brief for this rule, I feel the high court should clarify the so-called double-burden rule and the circumstances of its application.
I respectfully dissent.
NOTES
[1] Footnote by author. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971).
[2] See also Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972) where Justice Tate applied these principles to a case where only temporary custody had been granted.
[3] The author of this dissent has always adhered to the belief that Fulco v. Fulco did not overrule Decker v. Landry. See the opinions in Grimes v. Johnson, 323 So.2d 150 (La.App. 3rd Cir. 1975), in which writs were refused, and Swann v. Young, 311 So.2d 617 (La.App. 3rd Cir. 1975). In Swann, footnote 3 most explicitly stated:

3 This writer, however, is of the firm opinion that the rule expressed in Decker v. Landry, supra, is still the law and that under the applicable circumstances we are constrained to follow it unless it is expressly changed by our Supreme Court.
See also the concurrences in Hebert v. Mestayer, 251 So.2d 66 (La.App. 3rd Cir. 1971), and Simon v. Cobb, 300 So.2d 608 (La.App. 3rd Cir. 1974).
[4] Although in some cases they found the rule not applicable.