414 So.2d 787 (1979)
Herbert HEYMANN
v.
Carolyn Cecile LEWIS.
No. 6995.
Court of Appeal of Louisiana, Third Circuit.
June 15, 1979.
On Rehearing November 12, 1979.
Reggie, Harrington & Boswell by Oscar W. Boswell, II, and Edmund M. Reggie, Crowley, for defendant-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Joseph Onebane and Daniel G. Fournerat, Lafayette, for plaintiff-appellee.
Before CULPEPPER, WATSON, SWIFT, STOKER and DOUCET, JJ.
WATSON, Judge.
This is the appeal of a judgment changing custody of two girls from the mother to the father. The principal issue posed is whether the best interests of the children require that the custody be changed.
Herbert Heymann and Carolyn Cecile Lewis (sometimes referred to as Ms. Heymann) were married on February 20, 1948. Of their union, three children were born, but the eldest, Claire, is not involved in these proceedings except as a witness.
The custody of the two younger children, Lila Rosamond, age 12, and Joan Germaine, age 11, is disputed in this rule proceeding.
The Heymanns were separated by judgment of October 7, 1977, which granted a separation in favor of Herbert Heymann, but awarded custody of Lila and Joan to Carolyn Cecile Lewis while reserving "broad and reasonable visitation rights" to the father. (TR. 145-146).
*788 Much of the suit record is composed of proceedings relative to the substantial properties owned by the parties. There is no indication that evidence was taken concerning the custody of the children, and apparently, the allocation of their custody to the mother in the judgment of separation was by agreement. Thus, the custody disposition was not a "considered decree" within the contemplation of Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971).
On June 1, 1978, Herbert Heymann filed a rule against his separated wife to show cause why custody should not be changed to him, alleging that Carolyn Cecile Lewis had failed to provide a stable homelife for the children; that she had exposed them to improper influences; that she was not a fit person to rear the children; and that their best interests would be served by placing them in his custody. (TR. 339).
The rule was tried with the presentation of several witnesses on behalf of each party[1]
The trial court, stating that it was applying the amended Art. 157[2] of the Civil Code in accordance with the case of Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La., 1978), (which states that the courts must look less to the jurisprudence and more to the legislative will), entered an order changing custody from the mother to the father, reserving "broad visitation rights" to the mother. (TR. 445-446). The mother has appealed.
No purpose would be served by reviewing, in detail, the testimony presented for the reason that much of it had little or no relevancy to the custody issue. However, we will summarize the evidence as follows:
Carolyn Cecile Lewis was cross-examined at length concerning her trips in connection with her antique business and her encounters with one Jerry Garner, a merchant seaman, in whom she had a romantic interest. However, the trial court found, and we agree, that "... There is no testimony whatsoever of an adulterous relationship between Mr. Garner and Ms. Heymann and no evidence of any impropriety in front of the children." (TR. 444).
Mr. Heymann testified that his principal objection to his separated wife's having custody was that he did not like some of her friends. He admitted that he also had a romantic interest, one Janice Ingham, who had been on skiing trips with him.
The eldest Heymann child, Claire, and her separated husband, William Clark, testified in favor of Mr. Heymann.
Certain of William Clark's testimony related to an unlawful substance which Mr. Heymann testified he found in Ms. Heymann's purse while Clark was present. While testimony was adduced as to the nature of this substance, no mention was made by the trial court concerning this topic in the reasons for judgment. We perceive no reason to assign weight to this testimony.
*789 One witness testified as to the use of bad language by James Garner, who incidentally did not testify.
Two witnesses, longtime friends of the family, a Ms. Cashere and a Ms. Miciotto, stated their opinion that Ms. Heymann takes very good care of the two young girls and that they would be in a better situation under her continued custody than that of Mr. Heymann.
While this court recognizes that much weight is to be given the trial court's judgment in matter of custody, we find no basis whatsoever for the change of custody in the present case. This court[3] has taken the position that the so called "double burden" rule of Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955), has been severely limited, if not entirely abrogated. Bushnell v. Bushnell, 348 So.2d 1315 (La.App. 3 Cir. 1977); Bourque v. Leger, 322 So.2d 784 (La.App. 3 Cir. 1975). Nevertheless, a litigant who demands a change in custody must prove his case, that is, he must make a showing that the best interests of the child or children require that the custody be changed. Absent such a showing, the litigant's demands must be rejected.
There is nothing in the present record that establishes a reason for making a change; in fact, the contrary appears. It was established that these are girls of an age approaching puberty. They have always lived with their mother. These circumstances alone strongly militate for the continuation of their care, custody and control by the mother. The present record indicates that in their mother's custody they will continue to live in the same familiar surroundings in which they have always lived. They enjoy regular and frequent visitation with Mr. Heymann.
Analyzed under the wording of Civil Code Article 157, quoted at footnote (2) supra, which is that custody is to be awarded in "the best interest of the child or children", the record does not support the judgment in favor of Mr. Heymann. The only two disinterested witnesses supported the mother. The eldest daughter favored Mr. Heymann because she finds her mother's boyfriend "crude". (TR. 667). The age and sex of the children favor the mother's custody. As loath as we are to disagree with our esteemed brother of the trial court, we find he clearly erred in awarding custody to Mr. Heymann. The evidence simply does not support the conclusion that their best interests lie in being in their father's custody.
Therefore, the judgment of the trial court is reversed and set aside. The provisions of the judgment of October 7, 1977, awarding the custody of Lila Rosamond Heymann and Joan Germaine Heymann to Carolyn Cecile Lewis Heymann, together with all other incidents of the said judgment, are reinstated.
Costs of these proceedings, at trial and on appeal, are taxed to Herbert Heymann.
REVERSED AND RENDERED.
DOUCET, J., dissents and assigns written reasons.
CULPEPPER, J., dissents for the reasons assigned by DOUCET, J.
DOUCET, Judge, dissenting.
The principles governing custody awards were set forth by our Supreme Court in the following language from the opinion in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971):
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.

*790 "(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1, 102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App.1962) (citing numerous decisions of this court to such effect).
"(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); Nugent v. Nugent, 232 So.2d 521 (La.App. 1970) (citing numerous court of appeal decisions to such effect).
"(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952)."
The issue of the continued viability of the "maternal preference rule" set forth in paragraph (2) of the above quote has aroused much debate before both this court and the trial court. The majority notes that the trial court stated that it was applying amended Article 157 in accordance with Ardoin v. Hartford Acc. & Indent. Co., 360 So.2d 1331 (La.1978). It is clear from a reading of the trial court's written reasons for judgment that it did not consider the maternal preference rule to be valid and binding on the courts of this state. I believe that position to be absolutely correct.
Although the majority does not invoke that rule to support its decision to reverse, as I view the facts, its application (although erroneous) provides the only reasonable justification for that decision. Otherwise, violence is done to the other principles set out in Fulco v. Fulco, supra.
The maternal preference rule was developed by the courts and used by them in implementing the directive contained in Article 157 of the Civil Code. Prior to 1977 the first sentence of that provision read:
"In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party."
In recent years, the rule has not been applied to the extent prescribed in Fulco v. Fulco, supra. For example, in Welch v. Welch, 307 So.2d 737 (La.App. 2nd Cir. 1975), the mother was specifically found not to be unfit, yet custody was awarded to the father. See also, Caraway v. Caraway, 321 So.2d 405 (La.App. 2nd Cir. 1975). In cases such as these, the rule was said to merely establish a rebuttable presumption, operating in favor of the mother. Thus, the jurisprudential rule was said to have suffered considerable erosion. See Hays v. Hays, 365 So.2d 563 (La.App. 1st Cir. 1978).
Article 157 was amended by Act 448 of 1977; the first sentence now reads:

*791 "In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children."
The obvious purpose of that amendment was to equalize the positions of the parents in custody disputes. The standard to be applied is the furtherance of the best interests of the children. By imposing such an intentionally broad standard, unembellished by the legal presumption created by the maternal preference rule, the legislature vested the trial court with wide latitude in making its determination. Apparently cognizant of this fact, the legislature in the 1977 amendment to LSA-Civil Code Article 157 aided the trial court in its task by making it mandatory that custody hearings be held in the private chambers of the judge. The trial court is thus given a better opportunity to enjoy the benefit of pertinent testimony, relative to personal and private matters, which the witnesses might otherwise be more reluctant to freely discuss in a spectator-filled courtroom.
Article 157, in its present form, does not establish a preference for either parent. I believe that to continue to adhere to the maternal preference rule is to repeat the error pointed out by our Supreme Court in Ardoin v. Hartford Acc. & Ind. Co., supra, wherein the Court stated:
"[T]he appeals court measured the enactment solely against language contained in a judicial opinion. The basic error in this method of interpretation is that it not only ignores the first principles of our law but it also assumes that jurisprudence is equivalent to legislation instead of treating it as judicial interpretation which may or may not adequately reflect the meaning of the laws for contemporary purposes."
Much could be said about what prompted our legislature to amend Article 157, including the changing roles of men and women in our contemporary society. However, whatever the reasons, our legislature has clearly spoken, and we should act in accordance with this sound directive from our highest court.
As the majority points out, the original custody award in this case was not a "considered decree" within the contemplation of Fulco v. Fulco, supra. Therefore, Mr. Heymann did not bear the heavier burden of proof in such cases, which was detailed in paragraph (3) of the above language from that opinion. See also, Monsour v. Monsour, 347 So.2d 203 (La.1977) and Hays v. Hays, supra. His burden was simply to show that his custody of his children would be in their best interest.
The record shows that Mrs. Heymann has exhibited behavior which is not conducive to a stable and harmonious home life for these children. In addition to pursuing a romantic relationship which has obviously caused her family and friends a great deal of discomfort, she has frequently been absent from the home. Her activities are conducted in an erratic and unpredictable manner, which is disconcerting to those who depend on her. According to Mrs. Heymann's testimony, her daughters, ages 11 and 12, are well versed on the subject to their physical maturation and development, the responsibility for their education in that area having been largely assumed by their school.
In contrast to the above, the record shows that Mr. Heymann is a man of regular, dependable and temperate habits. He has tried to make himself available to his daughters when they might need his assistance in their studies, etc. The family has always had the means to employ others to assume many of the domestic burdens of their everyday life. The record shows that the employees who are presently performing these services for the children have been with the family for some time and could continue to do so in Mr. Heymann's home. The Heymanns' eldest daughter, Claire, testified that on several occasions she has assisted her younger sisters, when they needed guidance on matters of dressing and grooming. She evidently would continue to be available in this capacity if necessary.
*792 After hearing all of the testimony of the various witnesses, including the parties, the trial court determined that it would be in the best interest of these children for them to be placed in their father's custody, subject to broad visitation rights reserved to their mother. That determination is entitled to great weight and should not be disturbed in the absence of manifest error. Fulco v. Fulco, supra; Schexnayder v. Schexnayder, 364 So.2d 1318 (La.App. 4th Cir. 1978); Craft v. Craft, 184 So.2d 758 (La.App. 3rd Cir. 1966).
Despite the fact that the trial court was in a far better position to evaluate the conduct and character of the parties as well as the credibility of the other witnesses, the majority has substituted its judgment, based on a reading of an inanimate record. I believe that Mr. Heymann has borne his burden here. Although I believe that the maternal preference rule has been legislatively eliminated, the remaining principles expressed in Fulco v. Fulco, supra, are still applicable. Because I feel that the action taken by my brothers of the majority does not conform to those wise directives, I respectfully dissent.
Before CULPEPPER, WATSON, SWIFT, STOKER and DOUCET, JJ.

ON REHEARING
STOKER, Judge.
This matter was before the court on original hearing to determine whether the best interests of the children of the parties required that the custody be changed. The trial court had ordered a change, and we reversed through a majority vote. On application for rehearing by the plaintiff father, we granted a rehearing limited to the question of whether the interests of the children would best be served by a remand of the case to the district court for the taking of additional evidence and deciding the question anew based upon such evidence as might be shown. In his application, plaintiff-appellee, Herbert Heymann, moved alternatively for such a remand. The basis for the alternative relief requested was that certain facts which were relied upon by the majority on original hearing were no longer true. This fact was the assumption that the mother of the children, defendant Carolyn Cecile Lewis, would maintain her home and that of her children in Lafayette and the State of Louisiana. In connection with the motion to remand, it was suggested to the court through affidavit form that this assumption was not true, and the basis for the majority opinion was in error.
Although we may not take cognizance of matters not included in the record of trial,[1] special considerations apply here. It is basic and axiomatic that questions of child custody and visitation rights are never final. Changes in circumstances may justify a change or adjustment in custody and visitation rights. Citation of authority is unnecessary for this legal principle. While the views of the judges who heard this case on original hearing, which were in fact divided, have not changed, a majority have voted to remand. This majority takes this action based upon several considerations.
To begin with, it will result in speedier judicial administration. We recognized that, if the facts and situation upon which our majority opinion was based have actually changed, plaintiff-appellee could bring a new action for custody change based on the alleged changed circumstances. However, inasmuch as we have no res judicata considerations to prevent a remand, we regard a remand as the most appropriate course. If, in fact, new evidence justifies the trial court's award of custody to plaintiff-appellee, the welfare of the children involved requires that it be acted upon expeditiously and without delay.
A further point influencing us in our decision to remand is that such action, in *793 the normal course of judicial administration and procedure, will bring the matter before the same district judge who heard the case originally.
Finally, we believe that if the matter is to be recognized, a remand will be the least expensive mode of doing so, and will be less burdensome on the judicial system than would the filing of a new suit by plaintiff-appellee.
With respect to authority to remand the case for the purpose of taking new evidence, our authority is broad. LSA-C.C.P. art. 2164. The remanding of cases for additional proof of evidence to serve the ends and interest of justice is well settled. Turpin v. Turpin, 175 So.2d 357 (La.App. 2nd Cir. 1965) appeal after remand 186 So.2d 650 (La.App. 2nd Cir. 1966), application denied 249 La. 580, 187 So.2d 741 (1966); State, Through Department of Highways v. Pommier, 270 So.2d 274 (La.App. 3rd Cir. 1972); McKinney v. Levy, 212 So.2d 279 (La.App. 3rd Cir. 1968) and Poirier v. T. L. James & Co., Inc., 163 So.2d 171 (La.App. 4th Cir. 1964).
For the foregoing reasons the ends of justice and the best interests of the children involved require that we remand this case to the trial court for a reopening of the case, for the taking of additional evidence as may be relevant, and for disposition by the trial court thereafter on the basis of such additional evidence as may be received.
Therefore, it is ordered that the judgment of the trial court be, and it is hereby, annulled, avoided, reversed and set aside; the judgment and decree of this court on original hearing is likewise set aside; it is now ordered that this cause be, and it is hereby, remanded to the district court for further proceedings, for the introduction of additional evidence by either party, and the trial court is instructed to render such judgment as may be warranted by the evidence already contained in the record and such new evidence as the parties may see fit to introduce. Plaintiff-appellee is cast for the costs of this court.
DECREE ON ORIGINAL HEARING SET ASIDE, REVERSED AND REMANDED.
WATSON, J., dissents and assigns reasons.
WATSON, Judge, dissenting.
After studying the application to remand, I have concluded to vote against it. I would have voted for a remand if an application had been made prior to the rendering of the original opinion. It seems to me that the usual procedure of requiring the father, at this juncture, to file a new rule for custody would be better than remanding for additional evidence. I share the opinion advanced by counsel for the mother that there are many custody cases in which circumstances change and in which an application for remand might be filed while the matter is on appeal. To remand now is not in the interest of the orderly administration of justice.
Therefore, I respectfully dissent from the order granting the remand.
NOTES
[1] It is interesting to note that two doctors, presumably psychiatrists or psychologists, attended the hearing and remained present during the testimony. Counsel for plaintiff-in-rule requested that they be allowed to listen to the other witnesses because of their expert status. They were not called as witnesses. We find unnecessary a consideration of the persuasive argument by counsel for defendant-in-rule that a presumption should follow the failure of plaintiff-in-rule to present their testimony.
[2] LSA-C.C. art. 157:

"A. In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children. Such custody hearing shall be held in private chambers of the judge. In no event shall the pendente lite custody rights presently existing be affected by this Act. The party under whose care the child or children is placed, or to whose care the child or children has been entrusted, shall of right become natural tutor or tutrix of said child or children to the same extent and with the same effect as if the other party had died.
"B. If subsequent to the granting of a divorce or separation one of the parties to the marriage dies and is survived by a minor child or children of the marriage, the parents of such deceased party may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interests of the child or children."
[3] All members of the court do not agree; see dissent by Domengeaux, J., in Bushnell. Neither do the Circuits. See Languirand v. Languirand, 350 So.2d 973 (La.App. 2 Cir. 1977). The problems involved in working out rules or "guidelines" for custody cases are not easily solved. Observe the difficulties encountered by the Note at 38 La.L.Rev. 1096, in criticizing Bushnell for using "rigidly applied rules" (38 La.L.Rev. 1107) while calling for "a precisely worded set of guidelines". (38 La.L.Rev. 1108).
[1] An ex parte affidavit attached to a motion for remand can form no part of a record on appeal but may be noted on a question of whether or not to remand a cause for taking additional evidence. State, Through Department of Highways v. Pommier, 270 So.2d 274 (La.App. 3rd Cir. 1972).