381 So.2d 871 (1980)
James L. BORDELON, Plaintiff and Appellant,
v.
Cheryl Gaspard BORDELON, Defendant and Appellee.
No. 7546.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1980.
Rehearing Denied April 7, 1980.
*872 Gravel, Roy & Burnes, Christopher J. Roy, Alexandria, for plaintiff-appellant.
Knoll & Knoll, Jeannette Theriot Knoll, Marksville, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
CULPEPPER, Judge.
This is a child custody case. The child involved is Cindy Kaye Bordelon, now nine years of age. The trial judge changed custody from the father to the mother, Cheryl Gaspard Bordelon. The father, James L. Bordelon, appeals.
The essential issues are: (1) Is the so-called "double burden" rule controlling? (2) If not, was the trial judge clearly wrong in changing custody to the mother?
FACTS
James Bordelon and Cheryl Gaspard were married in 1971. Their child, Cindy Kaye Bordelon, was born the same year. On May 16, 1975, James obtained a divorce from Cheryl in a default judgment, wherein custody of Cindy was awarded to her mother. Cheryl then married Kenneth Bordelon, admitted to be the father of her second child, Kenneth Bordelon, Jr., who had been born in October, 1974, eight months before her divorce from James. Shortly thereafter, James Bordelon married Sherill Ducote, to whom he is still married. This was his fourth marriage.
Cheryl had many problems during her second marriage. In January, 1978, she left Kenneth in Morgan City and moved to Ruby, Louisiana, where her family resides. She rented a trailer and allowed John Crose to live there with her and her two children. In April of 1978, Kenneth sued for a legal separation on the basis of Cheryl's relationship with Crose.
In September, 1978, James Bordelon petitioned for a change of custody of Cindy, also due to the relationship with Crose. Cheryl was properly served, but fled with both of her children to Gonzales, Louisiana. She stated she did so because she was afraid *873 she would lose custody of Cindy. On October 6, a hearing on the matter of Cindy's custody was held without Cheryl's presence. Judge Earl Edwards heard testimony and awarded custody of Cindy to her father. There were no written reasons. James Bordelon ultimately had to go to Texas to find his daughter and return her to Avoyelles Parish.
In November, 1978, Kenneth Bordelon petitioned for custody of his child, Kenneth, Jr. Shortly thereafter, howeverCheryl and Kenneth were reconciled and have remained married to the present.
In February, 1979, Cheryl petitioned for the return of Cindy's custody. The hearing was set before Judge James N. Lee, who recused himself because his son, Nelson Lee, was representing Cheryl. The matter was heard by Judge James Mixon, ad hoc, who maintained custody in the father. In written reasons, Judge Mixon stated:
"Without going into all of her past, the Court is satisfied that Cheryl Gaspard Bordelon has shown that she is now back with her present husband, Kenneth Bordelon, and has been for over three months. Her husband is doing well financially. Cheryl testified that her marriage is on stable ground and that she is now able to provide a good and moral home for Cindy. The Court is of the opinion that three months may not be sufficient time to determine the stability of a marriage that has had its problems in the recent past. The Court also feels that testimony from Kenneth Bordelon would have been very pertinent, but he did not appear at this proceeding.
"There has been only one change in the present custody situation that could have a detrimental effect on the child, Cindy Bordelon. Her father, James L. Bordelon, was charged with shoplifting some three months ago and he allowed his $113 bond to be forfeited. The Court has wrestled with this problem and concluded, certainly without condoning, that this is not enough to greatly affect the home environment so that it now becomes detrimental to Cindy. However, the Court's opinion would change drastically should this shoplifting become a habit with James L. Bordelon."
In August, 1979, Cheryl again petitioned for the custody of her child, and this time her husband, Kenneth Bordelon, was present in court with her. At trial, the mother showed that her circumstances had remained the same, and that she had driven 400 miles every other weekend to visit with the child. She alleged that James had been defrauding the Social Security Administration in that he was collecting disability and working at the same time. She also stated that she had reported the fraud. James met the allegation of fraud by explaining that for a period of time, disability may be received while the recipient attempts re-employment. Other than the above, no issues or facts were presented that had not been at issue in the previous hearings before Judge Edwards in October, 1978 and before Judge Mixon in February, 1979. Transcripts of all proceedings were made a part of the present record.
Judge James N. Lee presided at the hearing of the present rule on August 20, 1979 and ordered that custody be changed to the mother. There were no written reasons for judgment. James Bordelon applied for writs of certiorari and was granted a stay of execution until the appeal could be heard.
The principal argument made on behalf of the father-appellee is that the trial court erred as a matter of law in failing to apply the "double burden" rule established in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955). This rule is to the effect that a person seeking change of custody must prove that (1) the circumstances under which the child is living are deleterious to its welfare and (2) the applicant for a change of custody can provide a better environment. Appellant's argument must be rejected.
Judges of the Third Circuit have been divided on the so-called double burden rule. See dissenting opinion of Judge Hood in Gary v. Gary, 143 So.2d 411 (La.App. 3rd Cir. 1962) and concurring opinions by then *874 Judge Tate in Wells v. Wells, 180 So.2d 580 (La.App. 3rd Cir. 1965) and Craft v. Craft, 184 So.2d 758 (La.App. 3rd Cir. 1966). See also Siggio v. Siggio, 217 So.2d 673 (La.App. 3rd Cir. 1969).
These decisions preceded the case of Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), in which the Supreme Court laid out four legal principles to be considered in appellate review of custody cases. These may be summarized as follows: (1) The paramount consideration is the welfare of the child. (2) Generally, the welfare of the child is best served by granting custody to the mother, especially a child of tender years. (3) When the trial court has made a considered decree of permanent custody in light of principles (1) and (2), the party seeking to change the custody bears a heavy burden. (4) On appeal, the trial judge's decision in custody matters is entitled to great weight.
After Fulco, in Bourque v. Leger, 322 So.2d 784 (La.App. 3rd Cir. 1975), this court took the position that:
"Our Supreme Court, however, in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), discarded the so called `double burden of proof' rule, and instead the court set out clear and understandable guidelines which are to be followed in determining to whom custody of children should be awarded, whether the case involves the initial awarding of custody or the transfer of custody from one person to another."
Again, in Bushnell v. Bushnell, 348 So.2d 1315 (La.App. 3rd Cir. 1977) this Court reiterated the position that:
"In our view, the double burden rule has been abandoned in favor of the approach that the courts must seek, above all else, the welfare of the child. * * * we do not believe the so-called `double burden' still prevails in Louisiana as a rigid and inflexible rule. . . ."
This position has not been accepted in all of the other circuits. See Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977); Thom v. Thom, No. 12,896 rendered November 12, 1979 (2d Cir.); McCarstle v. McCarstle, 356 So.2d 491 (La.App. 1st Cir. 1977); Schlegel v. Schlegel, 375 So.2d 756 (4th Cir. 1979).
Despite the lack of agreement by other circuits, this court feels strengthened in its own views by the authority of LSA-C.C. Article 157 as amended after Fulco. Article 157 was amended in 1977 to provide in part:
"A. In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children."
A question arose in the jurisprudence as to whether this amendment was intended to suppress the rigid maternal preference, as stated in some cases, that the mother is entitled to custody unless proven unfit or unable. See Heymann v. Lewis (3rd Cir. 1979); Atteberry v. Atteberry, 379 So.2d 18 (3rd Cir. 1979); Hegan v. Hegan, 367 So.2d 147 (La.App. 2nd Cir. 1979); Hayes v. Hayes, 365 So.2d 563 (La.App. 1st Cir. 1978). This question was answered in the affirmative with a second amendment to Article 157 by Act 718 of 1979, effective September 7, 1979, which provides:
"A. In all cases of separation and divorce, and changes of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children, without any preference being given on the basis of the sex of the parent."
In construing the 1979 amendment to Article 157, the Second Circuit made the following statement in Thornton v. Thornton, 377 So. 417 (2d Cir. 1979), with which we agree:
"It could hardly be more clear that the legislative intent is to do away with any legal preference or presumption in favor of the mother in custody disputes. The father and mother stand on equal footing at the outset and the role of the court is to determine the best interest of the child based on the relative fitness and ability *875 of the competing parents in all respects to care for the child.
"The legislative amendments do not, however, do away with the real life fact, based on human experience, that it is often, in many if not most family circumstances, in the best interest of young children to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many others, and will often compete with more materialistic factors that favor the father. It is correct, however, that this concept does not create a preference or presumption in favor of the mother that must be overcome by proof of the mother's unfitness or incapability."
The 1979 amendment to Article 157 also suppressed the rigid and inflexible double burden rule, as stated in some prior jurisprudence. This amendment expressly states that in all separation or divorce cases, "and changes of custody after an original award," custody shall be awarded in accordance with the best interest of the child. Thus, regardless of a prior award, custody may be changed if it is for the best interest of the child. There is no inflexible "double burden" on the party seeking change.
As noted above, the 1979 amendment became effective after the present case was decided by the trial court. We believe the amendment must be applied retroactively under principles of interpretive legislation. As was stated by the Supreme Court in the case of Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1974), on rehearing:
"[11] Moreover, interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. 1 M. Planiol, Treatise on the Civil Law, § 251 at 179 (La.St.L.Inst. transl. 1959). Yiannopoulos § 32.5 at 18 (1975 Supp.)."
Furthermore, the 1979 amendment must be applied retroactively because it is procedural, i. e., it provides for burden of proof in child custody cases. See Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La.1978) where a medical malpractice statute was held retroactive both because it was interpretive legislation and because it was procedural.
Even though there is no longer a rigid and inflexible double burden, prior custody is still a factor to be considered. Maintaining stability of environment, which was the policy consideration underlying the double burden rule, continues to be a factor in determining the best interests of the child. We stated in Bushnell, supra:
"How `heavy' a burden the applicant for a change in custody must carry will vary from case to case. We do not hold that the child's custodial circumstances and the length of time in a home are totally irrelevant. Obviously, a court would be reluctant to change the custody of a happy child who has been in one parent's home for three or four years. But returning a child to her mother after only a brief time with the father does not require the showing of deleterious circumstances other than that of being deprived of the mother's care and companionship which she had known most of her life."
In the present case, the trial court obviously concluded that a change of custody to the mother would be in the best interest of the child. In light of evidence showing the mother's continued reform, the fact that the child is being returned to the mother after being with the father less than a year, and the great weight to which the trial judge's decision is entitled in custody cases, we cannot say the district judge was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1977).
For the reasons assigned, the judgment appealed is affirmed at appellant's cost.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns reasons.
STOKER, J., concurs.
*876 DOMENGEAUX, Judge, concurring in the result.
Heretofore, I have consistently subscribed to the proposition that the double or heavy burden rule applied in change of custody cases under the jurisprudence. See my dissent in Bushnell v. Bushnell, 348 So.2d 1315 (La.App. 3rd Cir. 1977). I agree, however, that the 1979 amendment to Civil Code Article 157 pretty well does away with that rule as a rigid and inflexible burden. It goes without saying, however, that prior custody should still be a factor to be considered. Surely the maintaining of stability of environment is a factor to be considered in determining the best interest of the child.
I also agree that the 1979 amendment should be applied retroactively, but not under the principles of interpretive legislation as suggested in the majority opinion. The amendment, insofar as it refers to change of custody, is not interpretive of a previous statute. It legislatively overrules prior jurisprudence. Its retroactivity applies because it is procedural in character, i. e., having to do with presumptions and burden of proof. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978); General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953).

On application by Plaintiff-Appellant for a rehearing
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
PER CURIAM.
Plaintiff-appellant, James L. Bordelon, filed an application for a rehearing following rendition of our original opinion. Defendant-appellee, Cheryl G. Bordelon, filed an opposition to the application on the grounds that it was not timely filed.
A review of the record shows that our original opinion was rendered on Thursday, February 14, 1980, on which date a copy of the opinion, together with a notice of rendition of the judgment, was mailed by the clerk of our Court to counsel of record for each party. Plaintiff-appellant's application for rehearing was received through the mail by the clerk of our Court on Monday, March 17, 1980.
LSA-C.C.P. Article 2166 provides that an application for rehearing shall be filed "within thirty days of the mailing of the notice of the judgment of the Court of Appeal . . . ." Rule XI, Section 1 of the Uniform Rules of the Courts of Appeal provides for the mailing of notice of rendition of a judgment and states that an application for rehearing must be filed "on or before the thirtieth calendar day after, but not including, the date of personal delivery of mailing of such notice." Applying these rules to the present case, the 30-day delay to apply for a rehearing commenced on Friday, February 15 and ended on Saturday, March 15, 1980. Since Saturday is a legal holiday, the delay was extended to the following Monday on which day the application for rehearing was timely filed.
Plaintiff-appellant has filed in this Court a motion requesting that, in the event we deny his application for a rehearing, the stay order previously issued by us on August 29, 1979 be continued after our judgment becomes executory for a period of time sufficient for him to apply to the Louisiana Supreme Court for a writ of certiorari and a stay order. Finding this motion appropriate, we hereby extend the stay order previously issued by us on August 28, 1979 to Monday, April 21, 1980, on which date our stay order shall expire.
Finding no merit in the grounds urged in support of the application for rehearing, it is denied.
STOKER, J., votes for a rehearing limited to the question of whether or not a remand to the trial court for the taking of additional testimony would be appropriate.